## No. 8678.

## EX PARTE WALLS.

ATTORNEY.—*Application for Readmission to Practice Law.*— *Who may Resist.*—*Statute Construed.*—Section 780, 2 R. S. 1876, p. 308, authorizes any person to move to disbar or suspend an attorney from the practice of law, as well as to resist his readmission after he has been disbarred; and, where an attorney, who has been disbarred, applies for readmission, the court has the power to secure a petition against his readmission, and to appoint certain petitioners thereof to resist such application.

SAME.—*Office.*—The office of an attorney is *quasi* public, and his conduct semi-official, and any one may oppose his admission to practice law, or, if he has already been admitted, may move to suspend or disbar him, and, if suspended or disbarred, may oppose his readmission.

SAME.—*Proceeding for Readmission.*—*Practice.*—*Assignment of Error.*—In proceedings to remove or suspend an attorney from the practice of law, pleadings are required, but not in an application for admission or readmission. Such an application is not a civil action, requiring adversary pleadings, but is made by motion, which may be oral, and sustained or opposed by evidence, without written pleadings, and no available error can be assigned on the rulings of the court on the papers filed therein.

SAME.—*Burden of Proof.*—In such proceeding, the burden is on the applicant to show his qualification. even if there be no resistance thereto.

SAME.—*Jury Trial.*—The applicant, in such case, is not entitled to a jury trial, it being a summary proceeding, to be determined by the court.

SAME.—*Finding.*—The finding by the court, that such applicant. in his business relations outside of his profession, has been honest and upright, is not equivalent to finding that he is a person of good moral character.

SPECIAL FINDING.— *Verdict.*— *What Facts Found.*—*Practice.*—It is not the office of a special verdict or finding to find expressly upon the issues, but only to find the facts proven within the issues.

SAME.— *Venire De Novo.*—*Record.*—If the special finding or verdict is silent in reference to any fact or issue, such silence is not an omission apparent on the record, constituting ground for granting a *venire de novo*.

SAME.—*New Trial.*—If there was proof pertinent to any issue, on which the court ought to have found facts which are not found, the remedy is by motion for a new trial, on the ground that the finding is contrary to law, but not for a *venire de novo.*

SAME.—Where the finding of facts, in an application for readmission to practice law, does not show, affirmatively, that the applicant was a man of good moral character. nor the contrary, it is equivalent to an adverse finding in that respect.

From the Boone Circuit Court.

*W. B. Walls, S. M. Burke, J. W. Gordon, R. N. Lamb* and *S. M. Shepard*, for appellant.

*C. S. Wesner, O. P. Mahan, T. J. Cason* and *R. W. Harrison*, for appellee..

BIDDLE, C. J.—Application by the appellant to be re-admitted to practice law in the Boone Circuit Court, made by motion in writing, in the following words :

"The said William B. Walls comes, and humbly showeth unto the court, that heretofore, to wit, on the 6th day of September, in the year 1871, he was an attorney at law, duly admitted to the practice of the profession of law as such, in all courts of record, of and in the State of Indiana, and entitled to all and singular the rights and privileges of the said office of attorney at law ; that afterwards, to wit, on the 6th day of October, in the year 1877, under and by the order and direction of the Boone Circuit Court, then in session, one Thomas J. Terhune, Esq., was appointed and directed to institute proceedings against him, the said Walls, to remove him from the said office of attorney, and debar him from the practice of his said profession, and afterwards, to wit, on the 4th day of February, in the year 1878, the said Terhune, in pursuance of the order and direction of said court, did institute proceedings against him, said Walls, to remove him from said office of attorney and disbar him as such ; and he shows unto the court that the charge in the said complaint against him was, in substance, that he had falsely and corruptly forged, made and uttered, as true and genuine, a certain false and forged affidavit, purporting then and there upon its face to be the true and genuine affidavit of one Jacob L. Green, and to have been made by said Green for the purpose of procuring and obtaining a change of venue in a certain action pending in the Boone Circuit Court, in which the Thorntown District Council of the

Patrons of Husbandry was plaintiff, and the said Jacob L. Green was defendant; that he made answer to said complaint, denying each and every allegation thereof so far as the same charged him with any wrongful act; but he says that, upon the trial of said proceeding, he was found to be guilty of the wrongful and improper conduct charged against him in said complaint and proceedings, and was by said court adjudged to be guilty thereof, and suspended from the office of an attorney, and disbarred from the practice of law; and he says that he has ever since been denied the privilege and rights of an attorney, and still is. He says that said trial and judgment took place soon after the charges were first made against him, and that he was not at that time able fully to prepare himself therefor, and was surprised by the testimony of William I. Sutton, who testified that he, said Sutton, did not make the affidavit and swear to it, which he, said Walls, was charged with having falsely made and uttered. Whereas he, the said Sutton, had made said affidavit and sworn to it, although the same was written in the name of, and subscribed by the name of, said Jacob L. Green, and upon the face thereof appeared to be the affidavit of said Green, and the same was so made in the name of said Green upon its face, in the hurry of business and by mistake; whereas it was in fact written for and was subscribed by said Sutton with his mark and sworn to by him, and was in fact the genuine affidavit of said Sutton, and was uttered by your petitioner in good faith, and not as a false, forged and counterfeit affidavit, or with any thought, intent or purpose whatever to cheat or deceive said court. And he avers that after the said affidavit was so made, uttered, published and used by him, he was indicted in the Boone Circuit Court upon and for the charge and crime of perjury, in swearing upon the trial of said proceedings against him to disbar him, that said Sutton subscribed said affidavit, and that it was a genuine affidavit of said Sutton; and he says

that he appeared to said indictment and pleaded not guilty thereto, and for trial thereof put himself upon the country; and afterwards, to wit, on the 22d day of February, in the year 1879, in the said Boone Circuit Court, he was by a jury of his country found not guilty of said crime of perjury, and fully acquitted and discharged thereof and therefrom by said jury, by their verdict duly found and returned into open court, and by the judgment of the court thereon; and he now avers and charges that said prosecution upon said indictment involves the same issues in effect and fact as those involved in the charge brought against him to disbar him, and that upon the trial of said indictment he was able to prove facts which tended to prove, and did prove, that said Sutton had made the affidavit which was in controversy in the proceedings brought against him to disbar him; all of which evidence he was not able to prove upon the trial in that proceeding, owing to the recentness of said charge and the confusion resulting from the surprise occasioned by the testimony of said Sutton; and he says that said testimony, so by him procured up the trial of said indictment, was true, and still is true, and that the denial of said affidavit and the making thereof by said Sutton is not and was not true. And he says that he was wrongfully suspended from the office of attorney at law and disbarred from the practice of his said profession, when he ought not to have been, by reason of his innocence of the charge in said complaint filed against him by said Thomas J. Terhune, Esq., under the direction of said court; and, as he humbly conceives, he is fairly entitled to be restored to the practice of his profession, and to all and singular the rights and privileges pertaining to the office of attorney and counsellor at law.

"He says that he is a male person, over the age of twenty-one years, and a resident and elector of Boone county, and State of Indiana, and that he is a man of good moral character, and, as such, entitled to be admitted to practice law

and to enter upon the office and duties of an attorney at law; and in support of this last allegation he herewith files the affidavits of the following named persons: J. W. Nichol, J. H. Blackburn, A. Robinson, James W. Garner, William L. Gregory, Charles S. Riley, B. W. Stewart, D. M. Henry, A. G. Porter, James A. Nay, T. A. Andrews, Isaac Robinson, Abner H. Shepherd, James W. Cavin, William H. Harrison, Bradford Epperson, James Bragg, John A. Hysong and William Edwards, and makes each of them a part hereof. And he prays that he may be reinstated to the office of attorney, and to all and singular the rights and privileges thereof, and, as in duty bound, he will ever pray.

"WILLIAM B. WALLS.

"By HILL & NICHOL, his attorneys."

The petition was sworn to by the applicant. The affidavits referred to in it were filed as exhibits with it.

Upon the petition of twenty-one practicing attorneys of the Boone Circuit Court, alleging objections to the readmission of the applicant, the court appointed, of their number, C. S. Wesner, R. W. Harrison, T. J. Cason and Oliver P. Mahan to appear and resist the appellant's motion for readmission to the bar, to which the appellant excepted. They alleged in writing, and filed, thirty-five objections to the readmission of the appellant. As the court in its special finding has referred to several of these as being found true, it becomes necessary to simply state such of them as the court did not strike out, which may be done, in substance, as follows:

II. That the petitioner is a man of bad moral character.

III, IV, V, VI, VII, XX and XXI. The petitioner wrote, and caused to be published in the Indianapolis Journal and Herald, a false and slanderous charge against Judge Truman H. Palmer, in the month of May, 1878, which charge is set forth.

IX. That the petitioner, in 1874, while prosecuting at-

torney, accepted two notes for $25 each, from two persons named Waugh, and agreed to clear them of a criminal charge for the same.

X. That the petitioner, while prosecuting attorney, in 1874, represented to Charles McLain, that he, McLain, was indicted, and obtained five dollars of McLain to clear him of the charge.

XII. That the petitioner, while prosecuting attorney, in the year 1874, was in the habit of receiving bribes.

XIII. That the petitioner, as the attorney for Martha J. Crouch, in the case of *C. C. Galvin* v. *Martha J. Crouch*, in the Supreme Court, offered to confess errors, and let the case be reversed, for one hundred dollars.

XIV. That the petitioner, in the month of May, 1878, had a conversation with H. C. Wills, in which he, the petitioner, said that what he had published in the Herald about Judge Palmer was true.

XV. That the petitioner, while an attorney at law, wrote a waiver of service, without authority, and caused a judgment to be taken against Orvilla Dampier and others, in favor of William Dampier.

XVI. That the petitioner, while an attorney at law, withdrew his appearance from a cause, and, for so doing, received $25 from the adversary of his client.

XVII. That the petitioner took a receipt from S. I. Gillam, in the year 1875, for fifty dollars, and afterward changed said receipt so as to read two hundred and fifty dollars.

XIX. That the petitioner is a man of bad moral character for honesty.

XXII. That the petitioner has been indicted eleven times in the Boone Circuit Court.

XXIV. That the petitioner, while an attorney at law, counselled unjust actions and defences.

XXV. That the petitioner, while an attorney at law,

·drew a note payable in bank, secured by mortgage, when the mortgage was intended to be an indemnifying mortgage only.

XXVIII. That the petitioner, in the year 1874, testified falsely before J. R. Crigler, a justice of the peace.

XXXI. That the petitioner attempted to intimidate Dr. Garrison, L. O. Sering and Rebecca Sering, from testifying against him in this cause.

XXXII. That the petitioner procured a release from Eliza C. Haas, releasing him from a debt of $12.50, by stating to her that the debt was not just, and that he could prove he did not owe it.

XXXIV. That the petitioner testified falsely before Solomon Witt, Esq., in a case wherein Watson Workman was plaintiff, and Lane & Walls were defendants.

XXXV. That the members of the Lebanon bar do not fear the petitioner's strength and ability as a lawyer, and that petitioner was, while an attorney at law, abusive to the opposing counsel.

To the remaining specifications against him, the appellant filed a demurrer, for want of sufficient facts ; the demurrer was overruled, and exceptions reserved. He then filed a general denial and several special paragraphs of answer, upon which various rulings were had, which, as we view the the case, need not be stated.

The appellant demanded a jury to try the facts of the case ; his demand was denied, and exception reserved. He then moved the court to make a special finding of the facts proved, and state the conclusions of law thereon, which the court did, as follows :

"1st. That William B. Walls, the petitioner herein, was regularly admitted to practice law in this court, on the 6th day of September, 1871.

"2d. That, on the 4th day of February, 1878, Thomas J. Terhune, an attorney of this court, under its order and di-

rection, prepared and prosecuted an accusation against said Walls, charging him with preparing and presenting to the court, in a cause then pending therein, and in which he appeared as an attorney, a false and forged affidavit for a change of venue, and with procuring an order of the court, upon said affidavit, changing the venue in said cause.

"3d. That the proceedings under said accusation resulted in a verdict of guilty, and a judgment of the court thereon, suspending the petitioner from the practice of the law.

"4th. That, on the 16th day of May, 1878, and a few days after the judgment against the petitioner was rendered, there appeared in the Indianapolis Journal, a daily newspaper, published in the city of Indianapolis, charges against Hon. Truman H. Palmer, then judge of this court, purporting to have been made by the petitioner, among which charges was one to the effect that Judge Palmer was guilty of taking a bribe of $1,000, to influence his decision in the case of *The State* v. *Clem*, in the Boone Circuit Court, and which was given him by the petitioner, for the defendant in the case ; the petitioner then being official prosecutor in said court and charged with the prosecution of the said cause.

"5th. These charges were published as coming from the petitioner, and he now denies that he made them or authorized the publication.

"6th. That, on the 18th day of May, 1878, Judge Palmer caused to be published, in the same newspaper, an answer to these charges, in which, among other things, he charged the petitioner with being a well known bribe-taker, forger and perjurer.

"7th. That, on the 20th day of May, 1878, and while, as he now says, he was smarting under the attack made upon him by Judge Palmer, the petitioner wrote an article, addressed to the editor of the Journal, and caused it to be published, as an advertisement, in the Indianapolis Herald, a weekly newspaper, published at Indianapolis, Indiana, in

which he said, referring to the previous publication in the Journal, and the charges therein made, that such charges were true, and that he had simply stated that which was true.

"8th. In the publication last mentioned, the petitioner distinctly charged, among other things, that he, as prosecutor, and Truman H. Palmer, as Judge, had agreed between themselves to have the case of *The State* v. *Clem* dismissed, and the defendant set at liberty ; and that, as an inducement to the judge, the petitioner obtained money from the defendant and gave it to the judge, after which the petitioner, in said publication, said, 'I held Palmer, and used him as a potter would his clay.'

"9th. After this, the petitioner publicly charged, in the presence of numerous persons, citizens of Lebanon, Indiana, that Judge Palmer had accepted a bribe in the Clem case ; and also stated that he, Walls, had also received money from the defendant, in a larger sum than that received by the judge ; that he did not divide even with the judge, and that those who knew him ought to know that he would take care of himself.

"10th. That, while petitioner was the official prosecutor of the Boone Circuit Court, there was a criminal charge made against two persons named Waugh, pending in said court, and the petitioner procured each of said persons to execute to him a promissory note for $25, for which he promised to clear them of the charge against them.

"11th. That, while petitioner was a practicing attorney of said Boone Circuit Court, he instituted an action therein, in favor of William Dampier, against Josiah Dampier, Orvilla Dampier and others, to enforce a vendor's lien ; that the defendants, Dampier, were non-residents of this State ; that the petitioner procured a summons to issue against said defendants, and wrote thereon a waiver of service, signing thereto, without authority, the names of said non-resident defendants, by writing the names and affixing a mark, as their

mark, and afterward filed such summons and the waiver of therein, in court, in said cause, and proceeded to take a decree against said defendants.

"12th. That, in a paper filed in this cause at this term of court, the petitioner used unjustifiable and grossly disrespectful language concerning Hon. J. G. Adams, judge of the 19th Judicial Circuit, who was called to hear a motion made by the petitioner, at a previous term of this court, to be reinstated as an attorney at law, which language was used concerning the conduct of said judge while hearing such motion.

"13th. That, during the progress of the present hearing of this motion, the petitioner, while conducting his own cause, unnecessarily indulged in offensive personality, prejudicial to the reputation of a witness in the cause.

"14th. That at no time since the making thereof, until after the hearing of this motion began, has the petitioner ever retracted the charges made against Judge Palmer, or expressed any regret that he made them; nor until such time did he deny his connection with the alleged act of bribery.

"15th. That on the 14th day of April, 1880, and during the hearing of this motion, the petitioner filed a paper in this cause, in which he fully and completely retracted his charges of bribery against Judge Palmer, and afterwards made such retraction under oath as a witness.

"16th. That, as a witness in this cause, the petitioner admitted, under oath, that while he was prosecuting attorney, charged with the prosecution of the case of *The State* v. *Clem*, in which the defendant was charged with murder, he sought Judge Palmer, then judge of the court in which the cause was pending, at the request of the defendant, to ascertain whether he would entertain a motion to dismiss the case or admit the defendant to bail, and reported the result of his interview to the defendant.

"17th. That in his business relations, outside of his profession, the petitioner has been upright and honest.

"18th. That his general reputation for morals is not good.

"19th. That his general reputation has principally grown out of matters connected with his conduct while a practicing lawyer.

"20th. And the court finds generally, that the objections to the readmission of the petitioner, filed in this cause and numbered 3, 4, 5, 6, 7, 9, 14 and 15, are true.

"21st. That, as to all the charges not herein specially or generally found against the petitioner, the court finds in his favor, and that the charges were not proven.

"22d. That the applicant is now an adult male inhabitant of said county, and a voter therein.

"And the court finds as its conclusions of law from the foregoing facts, that the petitioner ought not to be reinstated in the profession and practice of law.

"T. F. DAVIDSON, Judge."

The appellant excepted to the conclusions of law upon the facts found, and also moved for judgment in his favor on the special facts found by the court.

Several other motions were made at this stage of the proceedings, and acted upon by the court; but, as the appellant in his brief does not insist upon the rulings thereon as error, we do not state them.

The appellant makes thirteen points in his argument. The *First*, *Second* and *Third* points go to the power of the court in securing the petition of certain persons, opposing the readmission of the appellant, and to the power of the court in appointing certain of said persons to resist the same. It is insisted that the court possessed no such power. We think it did. The code enacts as follows:

"SEC. 780. The proceedings to remove or suspend an attorney may be commenced by the direction of the court,

or on motion of an individual. In the former case, the court must appoint some attorney to draw up and prosecute the accusation ; in the latter case it may be drawn up by any person, and sworn to by the person making it.''

This plainly grants the power to any person to move for the removal or suspension of an attorney, and carries with it the implied power to resist the readmission of an attorney, after he has been suspended, to practice law. To hold that any person may move and prosecute an attorney to removal or suspension, and that no person can oppose his readmission after suspension, would be an incongruity. The office of an attorney is *quasi* public, and his conduct *semi*-official. All persons are interested in his rectitude, and any person may oppose his admission to practice law, or, if he has already been admitted, may move to suspend or disbar him, and, if suspended or disbarred, may oppose his readmission. The proceedings for admission or readmission to practice are at first necessarily *ex parte*, and, if no one had the right to oppose either, the proceedings would remain *ex parte*, and be liable to great abuse. The court did not err in any of its rulings on these questions.

The *Fourth*, *Fifth*, *Sixth*, *Seventh* and *Eighth* questions, discussed by the appellant in his brief, go to motions made, and demurrers filed, to the petition and the specifications in the defence.

The parties seem to have treated the proceedings as a civil action, requiring adversary pleadings. We take a different view of the case. It is merely an application by motion, which may be made even orally, and sustained or opposed by evidence, without any written pleadings. It is plain, therefore, that there could be no available error in the rulings of the court on the papers in the case, when no papers are required. We do not mean to condemn the practice of making such an application in writing, nor of stating the defence in writing ; on the contrary, it is commendable,

though not necessary. In proceedings to remove or suspend an attorney, pleadings are required, but not in applications for admission or readmission.

*Ninth.* The appellant thinks the court erred in denying him a jury to try the questions of fact. We think otherwise. It is not a civil action within the meaning of the common law, but simply a summary proceeding, to be determined by the court. Neither the constitution nor the statute gives the right of trial by jury in such a case, and it did not exist at common law. But in a case to remove or suspend an attorney, when pleadings are required, and a trial may be had as in other cases, the accused is entitled to a jury. 2 R. S. 1876, p. 308, sec. 780. As to cases wherein the parties have not the right to demand a jury, see the following authorities : *The Lake Erie, Wabash and St. Louis Railroad Co.* v. *Heath,* 9 Ind. 558 ; *Baker* v. *Gordon,* 23 Ind. 204 ; *Reily* v. *Cavanaugh,* 32 Ind. 214 ; *Hopkins* v. *The Greensburg, Knightstown and Clarksburg Turnpike Co.,* 46 Ind. 187 ; *The Logansport, Crawfordsville and South-Western Railway Co.* v. *Patton,* 51 Ind. 487 ; *Allen* v. *Anderson,* 57 Ind. 388 ; *Houston* v. *Bruner,* 59 Ind. 25.

*Tenth.* That the court erred in its conclusions of law on the facts found, is insisted upon at great length by the appellant. By the constitution, "Every person of good moral character, being a voter, shall be entitled to admission to practice law in all courts of justice." Const., sec. 21, art. 7. This presents the sole question in the case. When the appellant filed his application, and the facts therein stated were denied, he put the fact that he was a person of good moral character in issue ; and, to entitle him to admission, it was necessary that the court should find that fact to be true. It is claimed, however, that the court has so found by finding that the appellant, in his business relations outside of his profession, has been honest and upright. This is not equivalent to finding that he is a person of good moral

character.   It requires much more than mere honesty and uprightness in business relations outside of a profession, to constitute a good moral character.   Such business relations might admit even of the grossest misconduct and immorality in the practice of his profession, and does not exclude even crime.   Besides, the finding immediately adds, "That his general reputation for morals is not good."   It is impossible to fairly say, from the facts stated in the finding, that the appellant was a person of good moral character at the time he made his application for readmission.

We can not see wherein the court erred in its conclusions of the law as applicable to the facts stated in the finding.

*Eleventh* and *Twelfth*.   These points are not discussed in the appellant's brief, and must therefore be held as waived.

*Thirteenth*.   It is claimed, finally, that the court erred in overruling appellant's motion for a judgment in his favor on the special facts found by the court.

This question has already been decided under the *Tenth* proposition ; for, if the facts found did not entitle the appellant to readmission, it follows that to overrule his motion for a judgment in his favor was not erroneous.

The judgment is affirmed, at the costs of the appellant.

## On Petition for a Rehearing.

Woods, J.—It may be conceded, as claimed by counsel for the appellant, that, in the case at bar, the only issue was this :  Is said Walls a voter and a person of good moral character?  and that the inquiry had reference to the date of the motion for readmission, and of the hearing thereon.

The burden of this issue was on the appellant ; and this was so, even if there had been no resistance to the application. It is not apparent that the issues could have been so formed, or such an admission made, as to relieve him of this burden. All pertinent facts, for and against him, were provable

without special petition, plea or reply, and, if any of the facts specially pleaded against, or those found either for or against him, are irrelevant, they constitute only surplusage, immaterial and harmless, on which no available assignment of error can be predicated.

Upon the request of the appellant, the court made a special finding of facts, and stated its conclusion of law thereon. These are set out with sufficient fulness in the original opinion. Whether the appellant was entitled to claim such a finding, we need not decide. Having requested it, and the court having granted it, the case must be disposed of by the rules applicable to such findings.

Two propositions are now pressed upon our attention : First, that the finding shows that the appellant was a voter and a person of good moral character, and, therefore, entitled to an order for readmission ;. and, Second, that the finding is defective, in not showing whether he was or was not a person of good moral character, and that, consequently, a *venire de novo* should have been granted.

In support of the first proposition, much stress is laid upon the finding, "that, as to all the charges not herein specifically or generally found against the petitioner, the court finds in his favor, and that the charges are not proven ;" and counsel say that "among these" (so found in favor of the petitioner) "stands cause 19. The said William B. Walls is not a person of good moral character, but, on the contrary thereof, is a person of bad moral character."

This part of the finding can not, by any fair interpretation of its terms, and certainly not in the light of all that is specifically found, be construed to embrace said "Cause 19," which, in fact, is no charge at all, but amounts only to a denial of the petition. It may be, as is claimed, that the facts specially found are mainly items of evidence only, and that they relate directly to occurrences and transactions which happened some time · before the filing of the petition,

but, nevertheless, they were pertinent to the issue. They tend to show the character of the man, and, in the light of all that is found, it would be a singular standard, by which it could be claimed that this finding shows the appellant to be a man of good moral character.

The second proposition can not be maintained. In the case of *Graham* v. *The State, ex rel.*, 66 Ind. 386, the office of a special verdict or a special finding of facts was carefully considered ; and it was there determined that the facts to be stated in such finding or verdict were those which had been proved on the trial, and none other ; that if there were issues in a case, on which no evidence was offered, no finding should be made in reference thereto, and that the issues concerning which no facts were found should be regarded as not proved by the party on whom was the burden of the issue or issues. This case has been approved and followed in several cases decided at this term. *Martin* v. *Cauble*, 72 Ind. 67 ; *Vannoy* v. *Duprez*, 72 Ind. 26 ; *Stropes* v. *The Board*, etc., 72 Ind. 43.

There was, before the decision of the case of *Graham* v. *The State, supra*, some confusion and conflict in the cases on this subject. See *Schmitz* v. *Lauferty*, 29 Ind. 400 ; *Cruzan* v. *Smith*, 41 Ind. 288 ; *Dehority* v. *Nelson*, 56 Ind. 414 ; *Whitworth* v. *Ballard*, 56 Ind. 279 ; *Anderson* v. *Donnell*, 66 Ind. 150, and the cases referred to. But these cases should be deemed modified or overruled so far as inconsistent with the doctrine now settled, that it is not the office of a special verdict or finding to find expressly upon the issues, but only to find the facts proven within the issues. The inevitable corollary proposition is, that, if the special finding or verdict is silent in reference to any fact or issue, such silence is not an omission apparent on the record, which can be ground for granting a *venire de novo*. If in fact there was proof pertinent to any issue on which the court ought to have found facts which are not found, the remedy

must be by a motion for a new trial, on the ground that the finding is contrary to law. If pertinent and material facts are proven, but the court does not find upon them, and thereby impliedly finds that they are not proven, the finding in such respect is clearly contrary to law, and there is good cause for a new trial, but not for a new *venire*.

The application of this rule to the case under consideration is plain. If, as counsel so vigorously contend, the finding of facts does not show affirmatively that the appellant was a man of good moral character, nor the contrary, it is equivalent to an adverse finding in that respect; and we certainly can not say on the evidence that the finding is wrong.

Petition overruled, with costs.