Studabaker *et al.*, Ex'rs, *v.* Langard *et al.*

No. 8347.

STUDABAKER ET AL., EX'RS, *v.* LANGARD ET AL.

FRAUDULENT CONVEYANCE.—*Husband and Wife.*—*Notice.*—*Execution.*—*Judgment.*—*Assignment.*—*Mortgage.*—*Vendor and Purchaser.*—In an action to subject lands to the payment of a judgment against L., the facts found specially were, that on January 3d, 1874, L. and wife reconveyed the lands to H., the vendor of L., who held a mortgage for $6,000 purchase-money, and H., at the request of L. and wife, then gave the wife a title bond, conditioned for a deed when she paid H. $7,000, which was the original purchase price. H. credited her with $1,000 which L. had paid on the original purchase. H. paid nothing for the conveyance to him. The intention of L. (of which H. had notice) was to defraud the plaintiffs and other creditors, but as to the wife's intention or notice of her husband's intention the finding was silent. The judgment was rendered a few days after the giving of the title bond to the wife, and an execution thereon was levied on the lands, October 22d, 1874. L. had no other property subject to execution. L. furnished his wife $300 which she paid on the purchase by her from H., but all other payments by her thereon were of her own money—about $500. After the levy of execution the wife assigned title bond for $7,500 to C. who assumed her indebtedness to H. and paid or secured to her the balance. C. had no knowledge or notice of any claim of the plaintiffs against L. and wife. The conclusion of law was against the plaintiffs.

*Held*, that a failure to find that the wife had notice of the fraudulent intent of her husband must, on exception to the conclusion of law, be deemed equivalent to a finding of that matter against the plaintiffs, and that L.'s wife was a *bona fide* purchaser.

*Held*, also, that her assignee, even with notice, would take free from any claim of the plaintiffs.

*Held*, also, that the levy of the execution before the purchase by C. was not actual or constructive notice to L.'s wife or to him.

From the Allen Circuit Court.

*L. M. Ninde* and *T. E. Ellison,* for appellants.

*W. H. Coombs, J. Morris, R. C. Bell, W. G. Colerick, H. Colerick* and *T. W. Colerick,* for appellees.

ELLIOTT, C. J.—This case comes to this court upon a special finding of facts, upon which a conclusion of law was stated by the court. The material facts stated in the finding are, in substance, these: On the 19th day of January, 1874, appellants' testator recovered judgment against Joseph Langard for $1,000, an execution issued thereon on the 22d day of October, 1874, and on that day was levied upon the land in controversy. The land was bought by said Joseph Langard December 6th, 1873, for $7,000, of this sum $1,000 was paid at the time of the purchase, for the remainder of the purchase-money nine promissory notes were executed, and these were secured by mortgage. The deed executed to Langard and the mortgage executed by him were duly recorded. On the 3d day of January, 1874, Langard and wife reconveyed the land to Thomas B. Hedekin, and the latter, at the request of Langard and his wife, executed a " title bond " to Victorine Langard, wife of Joseph Langard, agreeing to convey to her by deed the said land upon payment to him of $7,000; that the $1,000, paid by Langard at the time of his purchase, was allowed and credited to the said Victorine. That Hedekin paid no consideration to Joseph Langard and that the conveyance by the latter to the former was for the purpose of defrauding appellants' testator, but that Hedekin had no intent to defraud any person by said transaction. That Hedekin did not surrender the notes or mortgage executed to him by Langard. That neither the deed to Hedekin nor the bond to Victorine Langard has ever been recorded. That Hedekin knew of the said claim against Joseph Langard when the last named deed and bond were executed, and knew also of the pendency of the action in which the judg-

ment of appellants' testator was recovered, and was informed by Langard when he, Hedekin, received the conveyance from him, that he, Langard, would not pay the said claim. That after the execution of the bond Joseph Langard paid $300 to his wife which was used by her in paying Hedekin; that all other payments were made with her own money. That on the 13th day of February, 1875, Victorine Langard sold and assigned the bond executed to her by Hedekin to Peter Certia; that Certia agreed to pay said Victorine for such assignment the sum of $7,500, and did pay $800 at the time it.was made and executed his promissory notes for $1,500, the sum due Victorine, and that he assumed and agreed to pay the sum due Hedekin upon the original purchase. That Certia had no knowledge or notice of any claim against the Langards, but that he purchased in good faith. It is also stated in the special finding, that Joseph Langard had no other property out of which the claim could be made, at the time the aforesaid transactions took place, nor did he have when this action was commenced.

Appellants insist that they were entitled to judgment subjecting the real estate in controversy to the lien of the judgment obtained by their testator against Joseph Langard, and that the court erred in finding in favor of the appellees.

Victorine Langard is not a party to this action. There is nothing in the special finding showing that she had any knowledge of the claim of appellants' testator, nor is there anything showing any fraudulent intent upon her part. The absence of a fact essential to the success of a party who has the burden of proof is, in effect, a finding against him upon that point. *Ex Parte Walls*, 73 Ind. 95, cases cited on p. 110; *Stropes* v. *The Board, etc.*, 72 Ind. 42.

We must, therefore, treat the finding as showing that when Victorine Langard received the bond from Hedekin, on the 3d day of January, 1874, she had no notice of her husband's fraudulent design, and that she acted in good faith. Indeed, this is the ordinary presumption, for fraud is never presumed.

It appears, too, that she was not a mere volunteer. When she received the bond from Hedekin, there was no lien upon the land and she was not, therefore, chargeable with constructive notice. Had she obtained a deed, she would certainly have been entitled to be regarded as a *bona fide* purchaser, with the right to hold and convey as such. The judgment subsequently obtained would not have been a lien upon the land in her hands. The appellants' testator had, when the bond was executed to Victorine Langard by Hedekin, no lien upon the land, nor any interest, legal or equitable, therein. He was a mere general creditor of Joseph Langard.

Leaving out of consideration the facts which we have stated and the rules of law to which we have referred, counsel argue that Certia had notice when he purchased, because the execution had been levied on the land prior to the purchase by him. This position can not be maintained. If Victorine Langard had acquired a good title then she could have conveyed one. This would be so even though she conveyed to one who had notice. *Sharpe* v. *Davis*, 76 Ind. 17. The fact that Certia purchased after an execution had been levied, would not have defeated his title, if it be true that his grantor was herself a purchaser in good faith. The judgment which furnished the foundation for the execution was the highest source to which appellants' claim of right could rise, and this was lower than Victorine's purchase, for that was anterior to the judgment. We can not, therefore, accept as correct appellants' theory, that, as Certia bought after the execution was levied, that fact alone subordinates his rights to those vested in appellants by the judgment against Joseph Langard.

The character of the title acquired by Victorine Langard exerts an important and controlling influence. If she acquired all the rights of a *bona fide* purchaser, then this point must be ruled against appellants. If she did not, then there is much force in appellants' argument, that, as Certia bought after the execution had been levied, he is to be deemed a purchaser with notice. Back of this, however, lies the controll-

ing question : Was Victorine Langard a *bona fide* purchaser ? The only infirmity in her title is that she held by an executory contract, and not by deed. She was not guilty of any fraud. She paid a consideration, and there was no purchase-money due the execution debtor when she parted with title. If the fact that she received a bond for a deed and not a deed is, as appellants insist, sufficient to deprive her of the character of a *bona fide* purchaser, then there would be ground for holding that Certia did not acquire a right paramount to that created by the levy of appellants' execution.

If the vendor of land were asserting a right to his lien, or if some person owning a prior equity were contesting the question, there would be much less difficulty in solving the legal problem. But the case is altogether different. Whatsoever rights the appellants' testator acquired in the specific property were such as his judgment supplied. Prior to the rendition of the judgment he had no interest in the land ; he was but a creditor, with a general right to subject by legal process the property of the debtor to the payment of his debt. We do not think the case of *Amory* v. *Reilly*, 9 Ind. 490, in point. That was a case where a vendor who had executed a bond for title sought to enforce a lien for purchase-money against the land, after it had passed by assignment of the bond, into the hands of a third person who had no notice of the lien. It was rightly held that the rule, that a vendor could not enforce his lien against a purchaser without notice, did not apply where the vendor had not parted with title. In the case of *Sergeant* v. *Ingersoll*, 7 Pa. St. 340, it was said that "the rudimental principle of equity that he who purchases an imperfect or inchoate title must stand or fall by the case of his vendor, has never been shaken ;" and this is a terse statement of a well known rule, in which we entirely concur. The rule, however, is not applicable to such a case as the present ; nor was it so applied in the case from which we have quoted. As we shall hereafter see, the rule stated supplies the appellants no foundation for the case made by the special

finding, but supplies rather a foundation for an adverse theory. The case of *Sergeant* v. *Ingersoll*, 15 Pa. St. 343, decides that the purchaser of a legal title, having notice that the estate is affected by other interests than those of the vendor, is bound to inquire into the extent and terms of those interests, and that possession puts the purchaser upon inquiry. This doctrine, it is plain, has no application here.

One who purchases an imperfect title is unquestionably put upon inquiry, and may be charged with all knowledge that a reasonable inquiry would have obtained. It may be conceded that Certia was bound to inquire as to Victorine Langard's title, and that the inquiry would have resulted in full information. The extent of this information, as the special finding shows, is, that Mrs. Langard bought without notice and in good faith. The fullest inquiry would not have disclosed any wrong on her part or any flaw in her title. The question, it must be borne in mind, is not whether Certia had notice, but whether his vendor had. As we have seen from the synopsis of the special finding, his grantor paid value, took in good faith and without notice. The rule, that a purchaser without notice may sell to one with notice, is for the protection of the innocent purchaser; for, if it were otherwise, such a purchaser, although entirely guiltless of wrong, would have his property bound up in his own hands, and the right of alienation entirely destroyed.

A question of some difficulty remains. It is plausibly argued that Mrs. Langard had not paid all of the purchase-money when the execution was levied, and that she can not be deemed to have been a *bona fide* purchaser. *Rhodes* v. *Green*, 36 Ind. 7, is cited in support of appellants' argument. The difference between that case and the present is, that there the vendee had actual notice of the vendor's fraud, and that there was no second conveyance. There was in the present case no actual notice of fraud, nor was there even notice of appellants' claim. The question whether the levy of execution was notice to Mrs. Langard is, therefore, one of impor-

tance. It is the rule in very many cases, that the owner is not bound to take notice of matters revealed by a record made subsequently to the acquisition of his rights or title. A vendee who executes a mortgage is not bound to ascertain that no executions have been levied subsequent to his purchase, although based upon a claim anterior to his purchase. A mortgagee who releases a mortgage is not bound to look to the record to ascertain whether the rights of purchasers have attached since the execution of his mortgage. It seems to us, that upon the same principle it must be held that a purchaser is not chargeable with constructive notice of the levy of an execution issued upon a judgment against a third person rendered subsequent to his purchase. Records are constructive notice of liens or rights existing at the time of the purchase, not of rights or liens acquired subsequently. Victorine Langard had, therefore, neither actual nor constructive notice of appellants' claim, and her rights were in no wise affected thereby. Her right to alienate was neither hampered nor restricted, and her assignee or vendee took what she had authority and right to assign and convey.

It is expressly found that Certia had no notice of any fraudulent design, that he did not know of appellants' claim, that he purchased in good faith, and that he has paid all of the notes executed to Victorine Langard, and that he has paid to Hedekin all the notes which matured before the trial of the present action. Certia is, therefore, not chargeable with actual notice of any defect in his vendor's title, and the only ground upon which any claim can be plausibly urged against it is that the levy of the execution was notice. Conceding, but not deciding, that this was notice, he occupies no worse situation than that of an ordinary purchaser with notice buying from a vendor without notice. It was apparent from the record that neither judgment nor execution was a lien against the property in the hands of Victorine Langard, and it is also apparent that she was entirely innocent of any fraudulent design, and there was therefore no reason why she could not

convey a good title. Enquiry would have resulted in informing him that the lien of the execution was inoperative as. against the land in the hands of his vendor, and he had a right to buy such a title as his vendor could convey.

When Victorine Langard sold to Peter Certia there was no purchase-money due Joseph Langard. The purchase by Victorine was from Hedekin, and all the purchase-money then unpaid was due to him. We can not in the face of this· fact assume that Joseph Langard had any interest in the land. If there had been unpaid purchase-money due to the debtor, Joseph Langard, then a different question would have been presented. It is true that one thousand dollars paid by the debtor was credited upon the purchase by Victorine, but we are bound to assume that so far as Mrs. Langard was concerned this was done in the utmost good faith. There was but one reason why the husband could not consent to the rescission of the contract between him and his vendor, and give his wife the benefit of the money which he had paid and that reason is, that he had no right to make a gift while owing debts which he could not pay. There was no gift. The crediting of the one thousand dollars upon Victorine's purchase must be regarded as a part of the consideration which induced her to buy the land. It can not be inferred that she would have paid the amount due Hedekin, unless she was allowed the benefit of a former payment. It may well have been that she deemed the property worth no more than the unpaid purchase-money due her husband's vendor. To presume fraud would be to violate an elementary rule. To presume that Mrs. Langard had knowledge of her husband's fraudulent purpose, would be to violate the settled rule, that what is not stated in the special finding is to be deemed as not existing. To presume that Mrs. Langard was a mere volunteer, would be to infer a thing which the special finding affirmatively shows to be untrue.

Judgment affirmed.