The First National Bank of Crawfordsville *v.* Carter *et al.*

No. 10,168.

. THE FIRST NATIONAL BANK OF CRAWFORDSVILLE *v.* CARTER ET AL.

SPECIAL FINDINGS.—A special finding of facts by the court, which fails to find as to a fact in issue, is equivalent to finding it against the party having the burden of that issue.

SAME.—*New Trial.*—If pertinent and material facts be proved, and there be no finding upon them, the remedy is by motion for a new trial and not for a *venire de novo*.

FRAUDULENT CONVEYANCE.—*Intent.*—*Notice.*—When a conveyance is as-

sailed as fraudulent as against the creditors of the grantor, the grantee not being a volunteer, both the fraudulent intent of the grantor and notice thereof to the grantee must be shown.

SAME.—*Sheriff's Sale.—Agreement.—Consideration.—Husband and Wife.—Notice.—Creditor's Bill.*—One insolvent and largely indebted, in order to defraud his creditors, procured an uncle of his wife to buy at sheriff's sale his lands worth $12,000, at that sum, upon an agreement that the uncle should, as he did, actually pay off the execution, $1,559.92, and give the land to the debtor's wife. The debtor, as agreed, receipted for the excess of the bid, and the uncle assigned the sheriff's certificate to the wife, who took a sheriff's deed.

*Held,* that, it not appearing that the uncle or the wife had notice of fraud, creditors could not subject the land to the payment of their demands.

From the Fountain Circuit Court.

*G. W. Paul, J. E. Humphries, L. Nebeker* and *H. H. Dochterman,* for appellant.

*J. McCabe* and *E. F. McCabe,* for appellees.

BLACK, C.—The appellant sued the appellees, Anna Carter and Samuel Carter, her husband, to set aside a transfer of certain real estate to said Anna, as having been made to defraud the creditors of said Samuel, and to subject it to the payment of a judgment obtained by the appellant after said transfer against said Samuel, upon an indebtedness existing at the time of the transfer.

The court, upon request of the appellant, rendered a special finding, as follows:

"1st. On the 11th day of November, 1876, the defendant Samuel Carter was the owner of real estate lying within the counties of Tippecanoe and Fountain, in this State, worth $50,500; he was the owner of personal property in Fountain county of the value of $7,920; he was indebted in the aggregate sum of $37,855.15; he was indebted to the plaintiff as alleged, and has not been the owner of any property other than as above stated since the date aforesaid.

"2d. On the 27th day of December, 1875, Henry T. Sample, John Sample and Robert Sample recovered a judgment in the Fountain Circuit Court against the defendant Samuel

Carter, for the sum of $1,362 and costs, collectible without relief from valuation or appraisement laws.

"3d. On the 1st day of July, 1876, an execution was issued on the Sample judgment and delivered to the sheriff of Fountain county; and on the 16th day of August, 1876, the sheriff, acting under said execution, levied upon the east half of the northeast quarter of section 16, township 21, range 6, of Carter's Fountain county lands, worth $5,600; afterwards the levy was changed to the west half of said quarter-section, worth $12,000. The change in the levy was made at Carter's. request. On the latter tract were Carter's dwelling and his valuable buildings. Carter's purpose in procuring the change on the levy was to cause the latter tract to be transferred to his wife through the medium of this sheriff's sale.

"4th. The sheriff advertised the latter tract of land for sale under said execution, fixing the time therefor on the 11th day of November, 1876.

"5th. On the 11th day of November, 1876, the real estate levied upon and advertised for sale by the sheriff was by him sold to Daniel R. Lucas, who bid thereon the sum of $12,-000; of this amount Lucas paid to the sheriff $1,559.92 cash, in satisfaction of the Sample writ, and took Carter's voluntary receipt on the execution for the residue; there being no other writ in the hands of the sheriff against Carter's property.

"6th. Lucas was a resident of Brown county, Illinois, a man of wealth and an uncle to Carter's wife; Carter's wife was a favorite of his. After Carter had procured the sheriff to change his levy, as stated in the third finding, he wrote to Lucas that his (Carter's) wife's homestead was advertised for sale, and that it would be sold, 'as he could not help it.' Lucas then came to Carter's home in Fountain county, and while there agreed with Carter to buy the land at sheriff's sale. On the day, Carter and Lucas came to the court-house together, and it was agreed between them that Lucas should buy the land and give it to Carter's wife, and that Carter

would receipt to Lucas for any excess of his bid over the amount due on the Sample writ.

" 7th. Upon the completion of his bid, the sheriff executed to Lucas a certificate of purchase, which Lucas assigned to Anna Carter, wife of the defendant Samuel Carter. The money paid by Lucas was his own, and it was furnished and paid by him without any agreement or expectation that it was in any way to be returned to him.

" 8th. Mrs. Carter paid nothing for the transfer of the certificate, and had no knowledge of the agreement or transaction between Lucas and her husband until the certificate of purchase was assigned and delivered to her. She now holds the land under a deed made to her as the assignee of Lucas by the sheriff.

" 9th. When Lucas was in Fountain county, there were no suits pending against Carter, and a comparatively small portion of his debts was represented by judgments. There was a mortgage lien on the Tippecanoe county lands, to secure an indebtedness to the Travellers Insurance Company of $7,000. Lucas had no information that Carter owed any debts except that due to the Samples. Carter's principal creditors resided at places remote from his home.

" 10th. The plaintiff recovered a judgment for $2,691 against the defendant Samuel Carter and Alexander Sayers, on the 15th day of March, 1877, in the Fountain County Circuit Court, which judgment remains in full force and is wholly unpaid.

" 11th. Sayers has been the owner of no property out of which any portion of plaintiff's debt could have been made since the date of the judgment therefor.

" 12th. All the real and personal property of Carter has been exhausted in the satisfaction of judgments and other liens senior to plaintiff's judgment.

" 13th. Both Carter and Sayers are married men and resident householders, and have been since December 27th, 1875.

"And the court states as its conclusion of law upon the foregoing facts, 1st. That the plaintiff is not entitled to the relief

demanded in the complaint, and that the defendants are entitled to a judgment for costs."

Appellant excepted to the conclusion of law, and moved for a *venire de novo.* The motion was overruled, and judgment was rendered in accordance with the conclusion of the special finding.

Lucas paid off the execution against Samuel for the purpose of securing the property in question to his niece, said Anna, and upon the consideration that it should belong to her. Though the amount paid was small compared with the value of the property, it was not insignificant in itself, and Lucas was not under obligation to pay anything. He had a right to require, in good faith, as a condition of his payment, that she should have the property. He paid a valuable consideration upon a condition which he had a right to exact. The fact that Samuel receipted voluntarily for a large part of the bid, while it might, under some circumstances, be an important badge of fraud, might, under the circumstances stated, be entirely consistent with good faith on the part of Lucas and Anna. The finding does not state facts implying bad faith on the part of Lucas; and it does not appear that Anna had any notice of a fraudulent intent. The finding says she "had no knowledge of the agreement or transaction between Lucas and her husband until the certificate of purchase was assigned and delivered to her." This is all that is said of any notice to Anna, and if this is a statement by implication that at the time of said assignment and delivery she acquired knowledge, it was knowledge only of what had taken place between her husband and Lucas. She was no more chargeable with notice than Lucas, so far as appears from the finding. The inadequacy of the consideration and Samuel's inability to pay off this execution were consistent with good faith in Lucas in requiring as a condition to his payment of the execution debt, that Anna should have the property. Lucas did not purchase the property for himself, but purchased upon an understand-

ing and agreement that he was to transfer it to Anna. But he paid a valuable consideration for her benefit. He paid the debt which Samuel was unable to pay, upon the understanding that by so doing he could acquire the right to give the property to Anna.

In one view, the transaction looks like a gift from the husband to the wife of the property, so far as its value exceeded the cash paid by Lucas; but Lucas made such payment, not merely for the purpose of paying Samuel's debt, nor for the purpose of procuring for Anna an interest in the property to the extent of the payment, but for the purpose of securing to her the entire property. In other words, Samuel released to Lucas, by said receipting, for a valuable consideration. To say that there was a gift from Samuel to Anna to the extent that the value of the property exceeded what was paid by Lucas, and to subject the property to that extent to the payment of Samuel's creditors, would be to take from Anna a part of that upon the consideration of her acquiring which Lucas paid off the execution. The transaction, as executed between the parties, was a conveyance through Lucas as a trustee to Anna, for a valuable consideration paid by Lucas.

When a conveyance is assailed as fraudulent as against the creditors of the grantor, and the grantee is not a volunteer, both the fraudulent intent of the grantor and notice thereof to the grantee must be shown. The burden of showing both a fraudulent intent on the part of Samuel and notice thereof to Lucas or Anna was upon the appellant. If, upon the facts stated, Anna must be treated as a purchaser for value without notice, we need not determine whether Samuel's insolvency was sufficiently shown, in view of the statute providing for the vesting in a married woman of her inchoate interest in the lands of her husband, in case of a judicial sale thereof, when such interest is not sold or barred. R. S. 1881, sec. 2508, *et seq.*

A special finding must contain all the facts essential to a recovery, and where, as is true in this case, the evidence is not in the record, the presumption is that the facts proved are

stated in the finding, and any fact not stated must be deemed not proved. *Graham* v. *State, ex rel.,* 66 Ind. 386 ; *Stropes* v. *Board, etc.,* 72 Ind. 42 ; *Vannoy* v. *Duprez,* 72 Ind. 26 ; *Talburt* v. *Berkshire, etc., Co.,* 80 Ind. 434.

The absence from a special finding of a fact essential to the success of a party who has the burden of proving that fact, is, in effect, a finding against him thereon. *Graham* v. *State, ex rel., supra ; Ex parte Walls,* 73 Ind. 95, 110 ; *Stumph* v. *Bauer,* 76 Ind. 157 ; *Studabaker* v. *Langard,* 79 Ind. 320.

The facts stated in the finding do not tend to establish notice of fraud to Lucas or to Anna; they rather indicate want of such notice. If pertinent and material facts were proved, upon which the court did not find, this was good ground for a new trial, but not ground for a *venire de novo.*

We think the judgment should be affirmed.

PER CURIAM.—It is ordered, upon the foregoing opinion, that the judgment be affirmed, at appellant's costs.

Petition for a rehearing overruled.

89   323
128   465
129   254

89   323
131   126

89   323
164   582

89   323
166   107