Filed January 7, 1896.

---

No. 17,623.

THE CITY OF NEW ALBANY ET AL. *v.* ENDRES.

PUBLIC IMPROVEMENT.—*Widening Street.*—*Resolution.*—*Nunc Pro Tunc Entry.*—*Municipal Corporation.*—A *nunc pro tunc* entry upon the minutes of a common council, to supply the omission of a

The City of New Albany *et al. v.* Endres.

former entry of the resolution submitting to the city commissioners the question of widening a street, to show that the resolution was adopted by a two-thirds vote, as required by section 3630, R. S. 1894, is binding upon a purchaser of property affected in the interval between the original and the *nunc pro tunc* entry, where the original entry did not affirmatively show a non-compliance with the statute. (See note at end of opinion.)

SAME.—*Street.—Eminent Domain.—Compensation.—Tender.*—Land cannot be appropriated for the purposes of a street unless compensation is first assessed and paid or tendered.

SAME —*Street.—Damages Assessed.—Tender.—Payment.—Appellate Procedure.*—A finding that damages assessed by city commissioners on account of the appropriation of land for the widening of a street, have not been tendered to the owner, will not be deemed, on appeal, to negative payment of such damages, as an offer of payment may have been made and accepted, which, if unaccepted, would not have been effectual as a tender, and a finding may have been intended merely to negative a tender, under section 3646, R. S. 1894, which does not involve an actual offer of the money.

APPELLATE PROCEDURE.—*Special Findings of Fact and Conclusions of Law Blended.*—Purported findings of fact which embraced legal conclusions inseparable from the facts, or which may have been made up and composed of matters of fact and law blended inseparably, will not be considered on appeal.

BURDEN OF PROOF.—*Tender.—Payment.—Damages.—Public Improvement.—Street.*—The burden of negativing tender or payment of damages assessed for land appropriated for widening a street, the failure to pay or tender which is essential, under section 3644, R. S. 1894, to an action to enjoin the proceedings, is upon the plaintiff in such action.

SAME.—*Right Dependent Upon a Negative.*—A party whose right is dependent upon a negative has the burden of proving such negative.

SAME.—*Purchaser of Premises Affected by Public Improvement.— Resolution.—Municipal Corporation.—Nunc Pro Tunc Entry.*— One who asserts that a *nunc pro tunc* entry upon the minutes of the common council, showing that the submission of the question as to the widening of a street to the commissioners was by a two-thirds vote, as required by section 3630, R. S. 1894, is not binding upon him, upon the ground that he purchased the premises affected after the submission and before such entry, has the burden of showing that he is such a purchaser.

From the Floyd Circuit Court.

*G. H. Hester, G. H. Voigt* and *E. B. Stotsenburg,* for appellant.

*A. Dowling,* for appellee.

McCABE, J.—The appellee sued the appellants to enjoin them from widening a certain street in said city, which, it is alleged, the appellants, the city and its marshal, were threatening and about to do by extending the same over appellee's lot. The issues formed were submitted to and tried by the court without a jury, resulting in a special finding of the facts, on which the court stated conclusions of law favorable to the appellee, upon which he had judgment perpetually enjoining appellants, as prayed for in the complaint.

The errors assigned here, among other things, call in question the conclusions of law. The determination of the question thus presented settles all the other errors assigned.

The material facts found are that on April 11, 1883, one Andros Huncilman became the owner in fee simple and possessed of the real estate described in plaintiff's complaint, and so held the same until December 2, 1890, when he sold and conveyed it to the plaintiff, who is now, and has ever since been, in possession thereof, and that Andros Huncilman's grantors had title to, and possession of, said property; that Poplar street in said city, being thirty feet wide, runs east and west along the south side of said real estate; that on July 21, 1890, the common council of said city, having under consideration a petition to widen said street between upper Eleventh and Thirteenth streets to the width of sixty feet, referred said petition to its committee on streets and alleys; that thereafter such action was taken by said common council as caused the city commissioners to meet at various times, who viewed said property and the adjoining

property, reported for appropriation the south thirty feet thereof, and fixed the value of the same at $500.00 and assessed damages and benefits upon their final report on December 15, 1890, the said common council approved the same, and attempted to appropriate said south thirty feet; that the records of the proceedings of said common council in relation to the widening of said street fail to show the vote taken, or yeas and nays on any resolution, motion or action of said council in relation to said matter until March 20, 1893, when by *nunc pro tunc* entry the resolution calling out the city commissioners was corrected, so as to show the vote thereon, and by *nunc pro tunc* entry the resolution adopting the final report of the commissioners was corrected by setting out the vote thereon; that the damages have been duly assessed by said city commissioners on account of said appropriation, but the same have not been tendered to the plaintiff; that neither the plaintiff nor his grantors have at any time granted to the said city any license or permission to use or appropriate any part of said real estate for a public street or highway; and no part thereof has at any time been dedicated to the public use as a street or highway; that the defendants have threatened to enter upon the south thirty feet of said real estate, and have given notice that they and the said defendant, William C. Myers, the marshal of said city, would enter thereon, and were about to do so, and remove the fences therefrom, appropriate and throw open the same as a public highway, the whole of said real estate being of the value of twelve hundred dollars.

The conclusions of law, or that which the court stated for conclusions of law, are three in number. The first is nothing but a statement of fact and need not be further noticed.

The second is as follows: "That the proceedings and all the acts of the common council of the city of New Albany in relation to the widening of Poplar street, between upper Eleventh and Thirteenth streets, prior and up to March 30, 1893, were not evidence against anyone; that on said day, by *nunc pro tunc* entries, ordered by said common council, they became evidence, regular and valid, except against intervening rights of third persons, and the plaintiff having become the owner in fee simple of the property described in his complaint, on the 2d day of December, 1890, his rights are not affected by said *nunc pro tunc* entries."

This conclusion of law proceeds upon the idea that the appellee had become the owner of the lot in question at some period of time after the common council had taken such action as caused the city commissioners to meet, view, report for appropriation, and assess damages, etc., and the making of the *nunc pro tunc* entry in the record of the common council showing the two-thirds vote in favor of such action. Section 3630, R. S. 1894 (section 3167, R. S. 1881), provides that "If the common council shall determine, by a two-thirds vote, to submit the said matter to the commissioners, it shall be so ordered, * * but no such matter shall be submitted unless so ordered by a two-thirds vote of such common council."

But the fact is not stated in the finding when such action was taken by such common council. The finding shows that the petition to widen the street was pending before the common council on the 21st day of July, 1890, and that the lot was conveyed to the appellee on December 2, 1890, thereafter. The final report of such commissioners is shown to have been filed on December 15, 1890, on which day it is found the common council approved it, and attempted to appropriate the said south

thirty feet of appellee's lot. That was nearly two weeks after he had become the owner. Therefore, for aught that appears in the special finding, the appellee may have been the owner of the lot when the two-thirds vote of the common conucil was taken in favor of submitting the matter to the city commissioners, and which was afterwards shown by the *nunc pro tunc* entry. If that be so, then he had no intervening rights, and was in no better attitude than if he had owned the property when the proceedings were begun. If the fact that appellee was an intervening purchaser between the two events mentioned, relieves him from the binding force of the action of the common council in making the *nunc pro tunc* entry, the burden rests on him of showing that fact. Therefore, the failure to find that fact was equivalent to a finding against him as to such fact. *Town of Fowler* v. *Linquist*, 138 Ind. 566; *Manor* v. *Board, etc.*, 137 Ind. 367, and authorities there cited on page 390; *Dodge* v. *Pope*, 93 Ind. 480; *Cincinnati, etc., R. W. Co.* v. *Gaines*, 104 Ind. 526.

The finding does show that he purchased after the proceedings were instituted. But it does not show when the two-thirds vote was taken. If it did, we could tell whether appellee was an intervening purchaser, because the finding shows that he purchased the lot December 2, 1890. But if the finding even showed that the two-thirds vote was taken before he purchased the lot, and the *nunc pro tunc* entry was not made until after his purchase, still the conclusion was wrong because the *nunc pro tunc* entry was binding on him. He does not complain that he had no notice; there is no finding that he had no notice. The theory of the complaint and the appellee` is that for want of such a record as the statute requires, the whole proceeding was void. In *Leonard* v. *Broughton*, 120 Ind. 536, pages 544–5, quoting from

Freeman on Judgments, it is said: " 'The entry of judgments or decrees *nunc pro tunc,* is intended to be in furtherance of justice. It will not be ordered so as to affect third persons, who have acquired rights without notice of the rendition of any judgment. Generally, such conditions will be imposed as may seem necessary to save the interest of third parties, who have acted *bona fide,* and without notice; but if such conditions are not expressed in the order of the court, they are, nevertheless, to be considered, as made a part of it by force of the law. * * And in section 67, he says: With the exception pointed out in the above section, a judgment entered *nunc pro tunc* must be every where received and enforced, in the same manner, and to the same extent as though entered at the proper time. Though an execution may have issued, and proceedings under it culminated by the sale of property, when there was nothing on the record to support it, yet the omission was one of evidence and not fact, and the evidence being supplied in a proper manner, full force and effect will be given to the fact as if the evidence had existed from the beginning.' " To the same effect are *Reilley* v. *Burton,* 71 Ind. 118; *Anderson, Admx.,* v. *Mitchell,* 58 Ind. 592; *Bush* v. *Bush,* 46 Ind. 70. Amendment of records by *nunc pro tunc* entry relate to the time when the proceedings actually took place. *Bush* v. *Bush, supra*; *Leonard* v. *Broughton, supra.* The same principle applies to the correction of records by *nunc pro tunc* entry by municipal corporations. *Chamberlain* v. *City of Evansville,* 77 Ind. 542; *City of Logansport* v. *Crockett,* 64 Ind. 319.

A very different question would be presented if the finding showed that the record of the common council disclosed that the vote by which the matter was submitted to the city commissioners was by less than two-

thirds in favor thereof, and that thereafter and before any amendments of the record the appellee became the owner of the lot without notice of the error; and that thereafter the common council amended the record by a *nunc pro tunc* entry showing the fact to have been that there was a two-thirds vote in favor of such submission. But under the facts as found, showing that the record discloses the adoption of the resolution, or motion to submit the matter to the city commissioners, but without disclosing the vote for and against, and without disclosing whether there was a two-thirds vote for it, necessarily put the appellee upon inquiry.

If in fact he became the owner of the lot after the making of such record, and before its amendment, he knew the fact to be that the vote in favor of such action was either by two-thirds or by less. He must be presumed to know the law that if by less it bound nobody, and if by two-thirds it bound all concerned, and bound him, and that the record might be amended by a *nunc pro tunc* entry to show that vote. Such an amendment does not contradict that part of the record already made, but is in perfect harmony with it. It brings into the record a fact which all must know, on reading it, must have existed the one way or the other.

The third and last conclusion of law is: "That the plaintiff is entitled to a perpetual injunction against the defendants enjoining them from entering upon said premises, from appropriating the same, from removing the fences therefrom, and from throwing the same open to be used as a public street or highway."

Whether this conclusion results from the previous one concerning the supposed invalidity of the record of the common council, or from the other facts found is not disclosed. If from the former, it follows from what we have said that it has no support and therefore is error. But it is

sought to support it on the fact found, "That the damages assessed by said city commissioners on account of said appropriation have not been tendered to the plaintiff." It has been held by this court that land cannot be appropriated for the purpose of a street unless compensation is first assessed and paid or tendered. *Faust* v. *City of Huntington*, 91 Ind. 493; *Holden* v. *City of Crawfordsville* (Ind.), 41 N. E. Rep. 370.

"There are many things," says Judge Elliott in his Gen. Prac., section 319, "which must concur to make a tender good."

Section 3644, R. S. 1894 (R. S. 1881, section 3181), provides that: "If the commissioners make a report to the common council, as herein provided, no injunction shall lie to restrain proceedings, unless the common council shall proceed to appropriate property upon which damages have been assessed, without first causing the same to be *paid* or *tendered*; but all other questions shall be raised and tried by appeal in cases where damages have been assessed, *paid* or *tendered*." By this section it seems clear that payment is treated as independent of tender, and it is thereby assumed that payment may take place without tender. The next section (3645) provides that "It shall be the duty of the city treasurer to *pay* or *tender*, or cause to be *paid* or *tendered*, the damages assessed to the person to whom assessed." Again twice assuming that payment is one thing, and tender another and that the former does not include the latter, the next section (3646) provides that "When the owners of the property are residents of the city the treasurer shall tender damages to them at their places of business, or at their residences or domiciles, as he may elect. When such persons are unknown or not residents of the city, or if the treasurer, upon diligent inquiry, cannot ascertain the residence or place of business of a resident of the city,

he shall publish in a daily newspaper, once in each week for two successive weeks, a notice specifying the amount in the treasury to be paid as damages, and stating the real estate upon which assessed and the readiness on his part to pay the same.    Such notice, so published as aforesaid,   *   *   shall constitute a valid and effectual tender.    In case an injunction is obtained because damages assessed have not been paid or tendered, the defendant may, at any time before the determination of the suit, pay or tender the damages assessed   *   *   * and thereupon the injunction shall be dissolved." There is no finding that the defendant did not pay the damages assessed.  Such damages might have been paid after the suit was begun so as to defeat the same. There is no finding that such payment had not been made.

It is true that it is found that they have not been tendered.  But that is a matter that may be made up of many facts and a legal conclusion.    For aught that appears from the finding, the appellee may have been a nonresident and his whereabouts wholly unknown to the city officials and they may have exactly complied with the section quoted, and yet in the opinion of the trial court that might not have constituted a valid and effectual tender, notwithstanding the statute says it shall.    There are many other facts that might have been proven tending to establish a tender, and yet the trial court being of opinion that such facts did not constitute a legal tender, felt justified in stating, as it did, that the damages assessed have not been tendered to the plaintiff.

But it may be asked, is not a failure to make a tender a fact where there has been no kind of an offer to pay whatever?  We answer yes.    But that is not the nature of the finding.    Had the finding been that there had

not been any kind of an offer to pay whatsoever it would have excluded the possibility of such finding being partly made up or composed of a conclusion of law upon certain facts in evidence but not stated in the finding. But the statute quoted makes the facts therein specified a legal tender though none of them amount to an offer to pay of any kind whatever.

A finding that a tender of the damages had been made would embrace matter both of law and fact there can be no doubt.

The acts, facts, and circumstances, claimed as constituting the tender, and the legal conclusion that they were sufficient, would all be embraced in such a finding. Because an offer to pay may be made by such a person, at such a time, at such a place, and in such material, as not to constitute a single element of a legal tender. And yet the trial court might think otherwise, and find as a fact that a tender had been made which would embrace matter of law and fact inseparably commingled.

The same may be true of a finding that no tender had been made, though not necessarily so.

The finding of facts and the conclusions of law must be separately stated; that is, a conclusion of law among the facts found has no force, and a fact found among the conclusions of law has no force. *Stalcup* v. *Dixon,* 136 Ind. 9, and authorities there cited. In a special finding of facts or a special verdict, the facts ought to be so stated that it can be seen and known that they are not composed of inseparable matter of fact and law. *Cincinnati, etc., R. W. Co.* v. *Grames,* 136 Ind. 39, at page 52. If the finding of facts contain conclusions of law that can be separated from the facts stated, that does not vitiate the facts found. But if the facts are so stated as to embrace legal conclusions, that are inseparable from the

facts with which they are blended, or in such a manner as that such statement may be made up and composed of matter of fact and law blended inseparably, such fact so found may be destitute of force and effect.

Such a rule is necessary to the correct administration of justice. In no other way can the right of a party to compel a separate trial of the questions of fact and a separate determination of the questions of law be secured. That questions of law and fact should be separately determined is frequently indispensably necessary to their correct determination.

Otherwise confusion and mistake are almost inevitable. So the finding that no tender was made is so framed that it cannot be known by this court that it is not composed partly of fact and the other part an erroneous legal conclusion.

But we need not and do not decide the case upon this point, because, aside from this, there is no finding that the damages assessed had not been paid. As before observed, payment may have been made by such a person, at such a time, at such a place, and in such material as not to contain a single element of tender, and yet, having been accepted, may constitute an effectual payment. If such payment had been made, then there is no other fact found that would justify the last conclusion of law. Appellee, however, contends that the burden was on the appellants to show the existence of all these facts, and to show that the damages had been paid, and the failure to find them was equivalent to finding against the appellants as to such facts, because it is insisted that the appellee was not required to prove a negative, though he had alleged it in his complaint.

It, however, is settled law that where a negative is essential to the existence of a right, the party claiming the right has the burden of proving such negative.

*Boulden* v. *McIntire*, 119 Ind. ·574, and authorities there cited; *Goodwin* v. *Smith*, 72 Ind. 113 ; *Vail* v. *McKernan*, 21 Ind. 421 ; *Maynes* v. *Moore*, 16 Ind. 116. In this case the nonexistence of a valid record and the nonexistence of payment or tender of damages were essential to the right to enjoin. The failure to find the negative of these facts as the appellee had alleged, or one of them, was equivalent to finding against him as to such fact or facts. See authorities above cited on this point: *Ex parte Walls*, 73 Ind. 95 ; *Parker* v. *Hubble*, 75 Ind. 580 ; *Stumph* v. *Bauer*, 76 Ind. 157 ; *Studebaker* v. *Langard*, 79 Ind. 320 ; *Spraker* v. *Armstrong*, 79 Ind. 577 ; *Talburt* v. *Berkshire Life Ins. Co.*, 80 Ind. 434. The trial court therefore erred in its conclusions of law.

The judgment is reversed and cause remanded, with instructions to award a new trial, as that, in our opinion, will, from the disclosures of the record, best promote the ends of justice.

Filed January 7, 1896.

NOTE.—The authorities as to the entry of a judgment *nunc pro tunc* are collated in a note to *O'Sullivan* v. *People* (Ill.), 20 L. R. A. 143.