ROSENBAUM BROTHERS *v.* NOWAK MILLING CORPORATION

[No. 27,917.   Filed December 7, 1943.   Rehearing denied
January 10, 1944.]

110

*Jay E. Darlington,* of Hammond, for appellant.

*Tinkham & Tinkham,* of Hammond, for appellee.

FANSLER, C. J.—The appellant began this action to procure a declaratory judgment.

The complaint alleges that the parties entered into a certain contract, which is exhibited, by the terms of which the plaintiff purchased a large part of the defendant's milling business, merchandise on hand, and certain trade-marks, for a consideration consisting of cash and certain royalties. Clause 15 of the contract provides that should the party of the first part (the defendant) "engage in the business of manufacturing and selling feeds in competition with the party of the second part during any of the first three years following the taking of the joint inventory, then the party of the second part shall not be obliged to pay any further royalties . . ." Clause 17 provides: "It is further agreed that, in consideration of the sale and purchase herein, and the agreement to pay royalties for the use of trade names and trade marks of the party of the first part by the party of the second part, the party of the first part will not engage in a competitive business with the party of the second part any time within the period of one year from the date of the joint inventory, at any place within 250 miles from Hammond, Indiana; provided further, that should at any time within a period of three years from the taking of the joint inventory, the party of the first part, or any of the officers thereof, engage in any competitive business with the party of

the second part, whereby such business is carried on under any name similar to the name Nowak Milling Corporation, then, in that event, all royalties provided under paragraph 15 hereof shall immediately cease to be due from the party of the second part." It is alleged that the defendant in its own name "undertook to engage in the business of manufacturing and selling feeds in competition with plaintiff" from July 2, 1938, until July 14, 1938, and that thereafter the defendant "engaged" in the same business from July 14, 1938, until July 21, 1938. It is alleged that the plaintiff paid all royalties due prior to July 1, 1938, and the plaintiff asks an adjudication that, by reason of the facts, the plaintiff was under no duty to pay any further royalties. The royalties which would have been due under the contract were paid into court.

Part of the court's findings is as follows: "The Court further finds that a real controversy exists between the plaintiff and the defendant as to whether or not the defendant engaged in the business of manufacturing and selling feeds in competition with the plaintiff from the 13th day of February, 1938, the same being the day of the taking of said joint inventory, up to and including the month of March, 1939; and, which of said parties is entitled to all of said royalties paid by the plaintiff to the Clerk of the Lake Circuit Court. The Court now finds that the defendant did not violate the terms of said contract by engaging in the business of manufacturing and selling feeds in competition with the plaintiff up to and including the month of March, 1939; and that the defendant is entitled to receive from the Clerk of the Lake Circuit Court . . . the amount of royalties."

The purpose of the action was to procure a construction of the contract in the light of the facts. The

complaint alleges that the defendant undertook to engage in, and did engage in, the business of manufacturing and selling feeds in competition with the plaintiff, and does not rely upon the defendant having engaged in any other or different business. The language of clause 17 of the contract differs somewhat from the language of clause 15. By clause 15, the party of the first part is permitted to "engage in the business of manufacturing and selling feeds in competition with the party of the second part" at any time within three years, and the only effect of the action would be a forfeiture of further royalties. The first part of clause 17 is an unconditional agreement that the party of the first part will not "engage in a competitive business with the party of the second part any time within the period of one year from the date of the joint inventory, at any place within 250 miles from Hammond, Indiana." The proviso enlarges the condition of clause 15 by providing that if at any time within three years "the party of the first part, or any of the officers thereof, engage in any competitive business with the party of the second part," the right to royalties shall cease. This difference is noted, however. Clause 15 is conditioned that should the party of the first part "engage in the business of manufacturing and selling feeds in competition with the party of the second part," while the proviso of clause 17 is conditioned upon the party of the first part, or any of its officers, "engaging in any competitive business with the party of the second part." It appears that clause 17 was prepared by the attorney for the plaintiff, and any ambiguity arising out of it must be construed against the plaintiff. The two clauses must be read together. The plaintiff seems to have been in doubt as to the effect of these provisions or it would have

discontinued paying the royalties. It chose rather to seek a construction of the contract by the court, while paying the royalties into court to avoid a breach of the contract. It may be concluded that the sole purpose of the proviso in clause 17 was to extend the provision of clause 15 to include officers of the party of the first part. Such a construction gives effect to all of the language of both clauses and avoids conflict.

There is evidence that on July 2, 1938, the defendant gave a written notice that it would engage in the business of manufacturing and selling feeds in Hammond on July 14, 1938. Upon receipt of this notice, the appellant brought an action and procured an injunction. Thereafter the defendant notified customers and others that the Hammond Elevator & Warehouse Company intended to engage in business on July 18, 1938, and that it would be the same business formerly conducted by the appellee. At the time of the notice, quotations and prices were mailed to prospective customers. The appellant began a second action for an injunction on July 18th, and an injunction was granted on July 21st.

There is no evidence that the appellee manufactured or sold any merchandise in competition with the appellant. There is evidence only that it signified an intention so to do at a future date. The trial court construed this as insufficient to prove the allegation that the defendant "engaged" in the business of manufacturing and selling. The appellant does not contend that there is evidence that the appellee manufactured or sold anything. It says: "Plaintiff's evidence does not disclose the extent of actual sales to customers accomplished by defendant before the injunction of July 21st. That was a matter peculiarly within defendant's knowledge

and defendant chose to rest without offering any evidence." But we think the burden was upon the plaintiff to offer some evidence.

The appellant says: "But the gist of plaintiff's case is not individual sales. It is the commencement of a competing business. The thing that plaintiff sought protection against was not individual sales or the small loss of profit from having defendant take one sale or a dozen sales away from plaintiff. The thing plaintiff feared was damage to its good will by having defendant disturb the new relations with its new customers whom it acquired from defendant. That is the thing the contract is designed to protect. The contract does not provide against individual sales but against defendant starting a 'competing business.'" But the contract does not refer to "starting" a competing business. It uses the word "engage." There is no provision in the contract that royalties should be forfeited should the party of the first part do anything to injure the good will of the business, and the parties were free to insert such a clause. It may be granted that advertising the fact that the party of the first part intended to engage in a competing business may have worked an injury upon the plaintiff, but the release of royalties is conditioned upon the defendant exercising the right to "engage in the business of manufacturing and selling feeds in competition with the party of the second part," and we conclude with the trial court that nothing less would forfeit the right to the royalties.

The judgment above referred to was entered on the 5th day of December, 1942. Thereafter, on the 21st day of December, and before any other action was taken by the court or any of the parties, the defendant filed a petition for further declaratory relief. This

petition recites that the royalties were not paid to the defendant when due, but that after the filing of the action for the declaratory judgment they were paid to the clerk of the court in accordance with the allegations of the complaint; that the defendant has been deprived of the use of the money from the respective due dates of each monthly payment; and the court is asked to declare that the defendant is entitled to interest at the rate of six per cent. per annum from the due date of each monthly installment until paid. Thereafter the plaintiff filed a motion for a new trial, which was overruled. Afterward the plaintiff filed a response to the petition for further relief. We need not notice the objections to the granting of the relief in detail. It is clear that there was a controversy below, and that there is a controversy here, as to the right of the appellee to have interest, and it seems from the unwillingness of the plaintiff to be in default under the contract that a determination of the question will suffice and will end the controversy. We go directly therefore to the merits of the question.

The royalties were due each month. In the absence of this litigation, and upon default of payment, the appellee might have maintained an action to recover the royalties, with interest from the date due. Upon bringing its suit, the appellant undertook to pay the royalties into court, as indicating a willingness to conform to its obligations under the contract as interpreted and construed by the court. The litigation has continued for a considerable time. The appellant cannot by this method prevent the appellee from having its money when due and still be excused from paying interest. It was not practicable to pay interest when the monthly payments were made into court, since no interest was then due, the right to

interest having accrued by the subsequent lapse of time. One who tenders money to another, who refuses to accept it, may generally bring it into court and be excused from the payment of interest; and a party to litigation who is a stakeholder may usually pay the money into court and avoid being charged with interest. But the appellant did not offer to pay the money to the appellee, and it was not a stakeholder. It contended that no money was due, and paid the money into court only to save its rights under the contract in the event it was determined that it was obligated to pay royalties. We find no reason or authority supporting the view that there is no interest due.

We find no error.

Judgment affirmed.

NOTE.—Reported in 51 N. E. (2d) 623.