KERFOOT ET AL. *v.* KESSENER ET AL.

[No. 28,412. Filed February 23, 1949.]

60

*Weigle & Munger, D. Preston Calvert and Harry P. Schultz,* all of Lafayette, for appellant.

*Chas. L. Vaughan, James E. Vaughan, A. Glen Armstrong and William C. Moore,* all of Lafayette, for appellees.

EMMERT, J.—This is an appeal from a judgment, entered upon special finding of facts and conclusions of law, quieting in appellees the fee simple title to certain real estate, hereinafter referred to as tract No. 1. The assignment of errors on appeal charges that the trial court erred in each conclusion of law on the special finding, and erred in overruling appellants' motion for new trial, which stated as cause therefor that the finding or decision of the trial court was not sustained by sufficient evidence, and was contrary to law.

On April 26, 1944, the appellant, Dorothy Kerfoot, filed a complaint to quiet title of certain real estate against the appellees, making therein the appellant, Oddie Kerfoot, her husband, a defendant for the reason he refused to join in her action. The complaint was in two paragraphs, the first alleging that the appellants were the owners in fee simple as tenants by the entirety

of tract No. 1, and the second paragraph alleged that the appellants were the owners "by complete equitable title" of the same real estate located in Tippecanoe County, Indiana. On June 14, 1944, the appellees filed a cross-complaint in two paragraphs to quiet title to three tracts of real estate against both appellants, alleging they were the owners of the fee simple title. The issues were closed by various answers and replies, which among other things put in issue the claim of appellant Dorothy Kerfoot that a certain deed and "option contract" constituted in fact an equitable mortgage, for her right to an accounting and recovery of over-payments under such "option contract" executed April 11, 1941.

The appellants were husband and wife, but at the time of the institution of her action were separated, with a divorce action pending. Appellant Oddie Kerfoot was in the contracting business and had been doing business with the appellees. He was in financial difficulties, and on the 11th day of April, 1941, the appellants executed a warranty deed, "subject to all liens and encumbrances now a lien on said real estate" to the appellees for three tracts of real estate in Tippecanoe County involved in this controversy. On said date and as a part of said transaction the appellants and appellees executed the following written contract:

"THIS INSTRUMENT OF WRITING, made and entered into this 11th day of April, 1941, by and between Oddie Kerfoot and Dorothy Kerfoot, of Tippecanoe County, Indiana, Parties of the First Part; and Henry J. Kessener, Flora Kessener and Clarence R. Grogan doing business as Henry J. Kessener Lumber Company, of Tippecanoe County, Indiana, Parties of the Second Part,

WITNESSETH:
THAT, WHEREAS said Parties of the First Part, have this date, conveyed to said Parties of

the Second Part, the following described real estate located in Tippecanoe County, Indiana, to-wit:

[Here follows description of real estate hereinafter referred to as:

Tract No. 1
Tract No. 2
Tract No. 3]

WHEREAS, said Parties of the First Part are indebted to said Parties of the Second Part in the total sum of $9,710.00, a schedule of which indebtedness is attached hereto and made a part hereof as though expressly set out herein; and

Whereas said Parties of the Second Part have agreed to liquidate and pay certain indebtedness of said Party of the First Part from funds received from loans due said Parties of the First Part, but said Parties of the Second Part is not to advance any funds of their own; and

Whereas said Parties of the First Part have this date conveyed said above described real estate to said Parties of the Second Part, in full satisfaction of all of said indebtedness, and not as security for a loan of the amount of said indebtedness;

NOW, THEREFORE, It is hereby agreed by and between said Parties of the First Part and said Parties of the Second Part that upon the repayment of said sum of $9,710.00 to said Parties of the Second Part by said Parties of the First Part, at any time within one (1) year from this date, with seven percent (7%) interest thereon, then and in that event, said Parties of the Second Part will reconvey to said Parties of the First Part, said described real estate by a good and sufficient warranty deed, subject to all liens and encumbrances.

IT IS FURTHER AGREED, that said Parties of the Second Part will not allow the taxes on said real estate to become delinquent but will pay the same and add any such amount to the above indebtedness to draw interest as aforesaid.

IT IS FURTHER AGREED, that said Parties of the Second Part shall credit against said sum of

$9,710.00, taxes and interest thereon, all the income derived from the rents of said real estate with 7% interest thereon, and that at the end of said option period said Parties of the Second Part shall reconvey to said Parties of the First Part, all said real estate, provided, however, that said Parties of the First Part shall first pay in cash to said Parties of the Second Part the said balance between $9,710.00, taxes, and interest, and the income from said real estate and said interest thereon.

IT IS FURTHER AGREED by and between the Parties hereto, that during the term of this option contract, said Parties of the First Part shall continue to purchase building material, lumber and supplies from said Henry J. Kessener Lumber Company and that all the business connected with said purchases and arising out of the renting of said real estate, shall be conducted through the office of said Lumber Company and made a matter of record in the books of said company.

This option purchase shall expire on the 11th day of April, 1942."

On April 11, 1942, the same parties executed an endorsement on said contract extending the option period as follows:

"For and in consideration of the receipt of One Dollar and other valuable consideration, we do hereby renew said option for a period of thirty-two (32) months from date; said renewal of this option shall expire on the 11th day of December, 1944."

After the cause had been tried and taken under advisement, on September 10, 1945, the trial court made and filed its special finding of facts and conclusions of law thereon, as follows:

### "Fact No. 1

"The court finds that defendant, Oddie Kerfoot, and the plaintiff, Dorothy Kerfoot, are husband

and wife, and that on the 11th day of April, 1941, they were the owners as tenants by entireties of the following described real estate located in Fairfield Township, Tippecanoe County, State of Indiana:

[Tract No. 3]
[Tract No. 1]

"Fact No. 2

"The court finds that on April 11, 1941, the defendant, Oddie Kerfoot, was the owner of the following described real estate:

[Tract No. 2]

"Fact No. 3

"The court finds that prior to and on the 11th day of April, 1941, the defendant, Oddie Kerfoot, was engaged in the business of building contracting, and on said date was the building contractor on divers contracts which were only partially performed on his part; that on said date the defendant, Oddie Kerfoot was indebted to the Henry J. Kessener Lumber Company, the defendants and cross-complainants, in the sum of Nineteen Thousand Nine Hundred One and 58/100 ($19,901.58) for building materials and supplies.

"Fact No. 4

"The court finds that prior to and on the 11th day of April, 1941, the defendant, Oddie Kerfoot, was insolvent, that many of his creditors were demanding payment; and that prior to April 11, 1941, the defendant, Oddie Kerfoot, sought the assistance of the cross-complainants herein, in order that he might consolidate his indebtedness.

"Fact No. 5

"The court finds that on April 11, 1941, the cross-complainants, doing business as and under the firm name of Henry J. Kessener Lumber Company, agreed with the defendant, Oddie Kerfoot, to furnish the materials and complete the various unfinished jobs which the said Oddie Kerfoot was

obligated under contracts to complete, and to pay the various sub-contractors and materialmen who held claims against the said Oddie Kerfoot; and on his part the defendant, Oddie Kerfoot, agreed with the cross-complainants that they, the said cross-complainants, would be entitled to receive from the owners of the divers properties who had entered into construction contracts with the said Oddie Kerfoot, the balances which would be due the said Oddie Kerfoot on said contracts when the divers and respective jobs should be completed.

## "Fact No. 6

"The court finds that divers sub-contractors and materialmen filed notice of intention to hold mechanics liens against Oddie Kerfoot, defendant herein; and against Oddie Kerfoot and Dorothy Kerfoot, defendant and plaintiff herein respectively, and against the divers properties whereon the defendant, Oddie Kerfoot, was engaged under contract in the building of houses and other buildings, in the total sum of Eight Thousand Five Hundred Twenty-three and 85/100 ($8,523.85), as the same appear in volume 12, page 2 to 29 both inclusive of the mechanics lien records of Tippecanoe County, Indiana; that said notices were filed prior to April 11, 1941.

## "Fact No. 7

"The court finds that on the 11th day of April, 1941, the defendant, Oddie Kerfoot, and the cross-complainants, doing business as and under the firm name of Henry J. Kessener Lumber Company, estimated that the debt of Oddie Kerfoot to said cross-complainants of Nineteen Thousand Nine Hundred One and 58/100 Dollars ($19,901.58) together with the estimated cost to complete the said Oddie Kerfoot's unfinished contracts, less the estimated balances due Oddie Kerfoot on said contracts, would leave a balance due the said cross-complainants of Nine Thousand Seven Hundred Ten and 00/100 Dollars ($9,710.00). That on said date the said Oddie Kerfoot and Dorothy Kerfoot, his wife, con-

veyed by warranty deed to the said cross-complainants the following described real estate,

[Tract No. 3]

And,

[Tract No. 1]
[Tract No. 2]

for the sum of Nine Thousand Seven Hundred Ten and No/100 Dollars ($9,710.00) in satisfaction of the estimated indebtedness of the said Oddie Kerfoot remaining after the completion of his contracts and the collection and credit of the balances due him on said contracts by the cross-complainants.

## "Fact No. 8

"The court finds that on the 11th day of April, 1941, the said Oddie Kerfoot and Dorothy Kerfoot entered into a contract with the said cross-complainants by the terms of which the said cross-complainants gave the said Oddie Kerfoot and Dorothy Kerfoot an option to purchase the real estate which they had that day conveyed to the said cross-complainants, which contract is attached to and made a part of the cross-complaint herein and marked Exhibit A.

## "Fact No. 9

"The court finds that on the 11th day of April, 1942, the cross-complainants renewed and extended said option contract with the said Oddie Kerfoot and Dorothy Kerfoot to the 11th day of December, 1944, which renewal is in the words and figures as follows:

"For and in consideration of the receipt of One Dollar and other valuable consideration, we do hereby renew said option for a period of thirty-two (32) months from date; said renewal of this option shall expire on the 11th day of December, 1944.

## "Fact No. 10

"The court finds that during the period of April 11, 1941, to December 31, 1942, the cross-complain-

ants charged the said Oddie Kerfoot Five Thousand Three Hundred Seventy-four and 25/100 ($5,374.25) for materials furnished and expenditures made to complete the unfinished building contracts of the said Oddie Kerfoot, including the procurement of the discharges of the divers notices of intention to hold mechanics liens filed against the said Oddie Kerfoot and Dorothy Kerfoot and against said properties.

## "Fact No. 11

"The court finds that subsequent to April 11, 1941, the cross-complainants received the total sum of Twelve Thousand Three Hundred Sixteen and 56/100 Dollars ($12,316.56) due Oddie Kerfoot on the completion of his divers building contracts and credited the same to the indebtedness of the said Oddie Kerfoot and Nineteen Thousand Nine Hundred One and 58/100 ($19,901.58) and Five Thousand Three Hundred Seventy-four and 25/100 Dollars .($5,374.25) pursuant to the agreement and arrangement between the parties.

## "Fact No. 12

"The court finds that one of the properties conveyed by Oddie Kerfoot and Dorothy Kerfoot to the cross-complainants herein on April 11, 1941, to-wit: [Tract No. 3] was subject to a mechanics lien in the sum of Seven Hundred Fifty-three and 42/100 Dollars ($753.42) which sum was paid by the said cross-complainants subsequent to April 11, 1941; that said property prior to said conveyance was also subject to a mortgage lien and that the cross-complainants paid on the principal and interest on said mortgage debt subsequent to April 11, 1941, in the sum of Five Hundred Sixty and 00/100 Dollars ($560.00); that the cross-complainants also paid, subsequent to April 11, 1941, the sum of Twenty-four and 50/100 Dollars ($24.50) for expenses incurred by the said Oddie Kerfoot and Dorothy Kerfoot in obtaining the mortgage loan on said property; that the cross-complainants collected rents for said property during the period from April 11, 1941, to March 30, 1944, in the total sum

of One Thousand Seven Hundred Fifty-seven and 52/100 Dollars ($1,757.52); that the cross-complainants, with the consent and approval of the said Oddie Kerfoot and Dorothy Kerfoot conveyed said property on March 30, 1944, and the said Oddie Kerfoot and Dorothy Kerfoot joined in said conveyance; that in the consummation of said sale the balance of principal and interest due on the mortgage hereon in the amount of One Thousand Six Hundred Forty-two and 92/100 Dollars ($1,642.92) was paid and that the cross-complainants received the remainder of the purchase money of One Thousand Seven Hundred Nine and 73/100 Dollars ($1,709.73); that all of the foregoing transactions resulted in receipts of Two Thousand One Hundred Twenty-nine and 33/100 Dollars ($2,129.33) in excess of expenditures made by the said cross-complainants.

## "Fact No. 13

"The court finds that another of the properties conveyed by Oddie Kerfoot and Dorothy Kerfoot to the cross-complainants on April 11, 1941, to-wit: [Tract No. 2] was subject to a mortgage lien prior to and on April 11, 1941; that the cross-complainants subsequent to said date paid on the principal and interest of said mortgage debt the sum of One Thousand Two Hundred Thirty-three and 53/100 Dollars ($1,233.53); that on October 26, 1943, the cross-complainants, with the consent and approval of the said Oddie Kerfoot and Dorothy Kerfoot, conveyed said real estate and the said Oddie Kerfoot and Dorothy Kerfoot joined in the conveyance thereof; that in the consummation of the sale of said property the balance of principal and interest due on said mortgage loan in the amount of Four Thousand Fifty-seven and 15/100 Dollars ($4,057.15) was paid and the said cross-complainants received the balance of the purchase money of Two Thousand One Hundred Ninety-two and 85/100 Dollars ($2,192.85); that the cross-complainants paid the expenses of said sale in the amount of Two Hundred Eighteen and 25/100 Dollars ($218.25); that during the period from April 11, 1941, to the date of sale the cross-complainants

received the rents from said property in the total sum of One Thousand Four Hundred Fifty and 00/100 Dollars ($1,450.00) ; that all of the foregoing transactions resulted in receipts of Two Thousand One Hundred Ninety-one and 07/100 Dollars ($2,191.07) in excess of expenditures made by said cross-complainants.

## "Fact No. 14

"The court finds that the third property conveyed by the said Oddie Kerfoot and Dorothy Kerfoot to the cross-complaints on April 11, 1941, and commonly described as the property at the corner of State Street and Earl Avenue in the City of Lafayette, Indiana [Tract No. 1] ; was subject to a mortgage lien on and before said date of conveyance ; that the cross-complaints, subsequent to April 11, 1941, paid against the principal and interest of said mortgage loan the sum of Eight Hundred Seventy-eight and 50/100 Dollars ($878.50) ; that subsequent to April 11, 1941 the said cross-complainants also paid taxes assessed against said property in the sum of Thirty-two and 91/100 Dollars ($32.91) ; that during the period from April 11, 1941 to December 31, 1944 the cross-complainants received rents from said property in the total sum of Two Thousand One Hundred Sixteen and 67/100 Dollars ($2,116.67) that all of the foregoing transactions resulted in the receipt of One Thousand Two Hundred Five and 26/100 in excess of expenditures made by the said cross-complainants.

## "CONCLUSIONS OF LAW

"The court now states its conclusions of law on the facts found as follows, to-wit:

"1. The credits against the agreed consideration of Nine Thousand Seven Hundred Ten and 00/100 Dollars ($9,710.00) to which the plaintiff, Dorothy Kerfoot, and the defendant, Oddie Kerfoot, would be entitled under the terms of the option contract between the said Dorothy Kerfoot and Oddie Kerfoot and the cross-complainants; in the event the said Kerfoots had exercised their option to pur-

chase the real estate described in said contract, amount of Five Thousand Five Hundred Twenty-five and 66/100 Dollars ($5,525.66); that said credits are not sufficient to entitle the said Kerfoots to have their title to any real estate described in said contract quieted.

"2. That the plaintiff, Dorothy Kerfoot and the defendant Oddie Kerfoot, have not exercised their option to purchase any of the real estate described in said option contract.

"3. That the period during which said Kerfoots were granted an option to purchase the real estate described in said option contract has expired.

"4. That the cross-complainants, Henry J. Kessener, Flora Kessener, and Clarence R. Grogan, doing business as and under the firm name of Henry J. Kessener Lumber Company are entitled to have their title quieted as against the plaintiff Dorothy Kerfoot, and the defendant, Oddie Kerfoot, to the following described real estate, to-wit:

[Tract No. 1]"

To each of said conclusions of law the plaintiff at the time excepted.

An exception to a conclusion of law admits for the purpose of the exception only that the facts which are properly within the issues have been fully and correctly found. *Walb Construction Co.* v. *Chipman* (1931), 202 Ind. 434, 175 N. E. 132; *State ex rel. Sauter* v. *Richey* (1930), 202 Ind. 116, 172 N. E. 119; *State ex rel. Siebrase* v. *Meiser* (1929), 201 Ind. 337, 168 N. E. 185; *Brown* v. *Guthrie, Auditor* (1916), 185 Ind. 669, 114 N. E. 443; *Kline* v. *Dowling* (1911), 176 Ind. 521, 96 N. E. 579; *Guardian Life Ins. Co.* v. *Brackett* (1940), 108 Ind. App. 442, 27 N. E. 2d 103. Its function is analogous to that of a demurrer in that even admitting as true the facts as found, the conclusion of law is not supported by the facts. *Shedd* v. *American Maize Products Co.* (1915), 60 Ind. App. 146,

108 N. E. 610, and cases cited. Where a finding of fact is cast among the conclusions of law it will not aid a deficient finding of facts, but must be disregarded. *City of New Albany* v. *Endres* (1896), 143 Ind. 192, 42 N. E. 683; *Sohn* v. *Cambern* (1886), 106 Ind. 302, 6 N. E. 813; *City of Indianapolis* v. *Kingsbury* (1885), 101 Ind. 200, 51 Am. Rep. 749; *Hammann* v. *Mink* (1885), 99 Ind. 279.

The determination of whether a statement in a special finding of facts and conclusions of law is a finding of an ultimate fact or a conclusion of law is often a matter of great difficulty. A statement of relief to which a party is entitled is a conclusion of law. *Cromer* v. *City of Logansport* (1906), 38 Ind. App. 661, 668, 78 N. E. 1045. Conversely, a statement that a party is not entitled to certain relief is a conclusion of law. *Gas Light & Coke Co.* v. *New Albany* (1894), 139 Ind. 660, 39 N. E. 462.

The first conclusion of law did improperly state matters of ultimate facts concerning the credits to be applied in behalf of the appellants on the option contract. However, findings No. 12, 13 and 14 did show that only the sum of $5,525.66 was properly credited to the option contract. If the findings state facts so that the amount due can be determined by computation, they are sufficient. *The Emerson Fisher Co.* v. *Marshall* (1892), 4 Ind. App. 265, 30 N. E. 1099; *Thornburg, Admr.,* v. *Buck* (1895), 13 Ind. App. 446, 41 N. E. 85; *Biddle* v. *Pierce* (1895), 13 Ind. App. 239, 41 N. E. 475. Therefore, the statement that the Kerfoots were not entitled to have their title to any real estate quieted was a conclusion of law and supported by the ultimate facts found.

Conclusions of law No. 2 and No. 3 were to the effect that the Kerfoots had not accepted the offer contained

in the option before it expired. A statement that there has been no acceptance of a written proposal sued upon is not a conclusion of law but a statement of fact "which should properly have appeared in the special finding of facts, and hence no error can be predicated upon an exception to it, as a conclusion of law." *Schmitt v. Weil* (1910), 46 Ind. App. 264, 266, 92 N. E. 178. But since these statements of fact were cast among the conclusions of law, they can not aid the finding of facts for the purpose of the other conclusions of law.

In a quiet title action the proponent can only recover on the strength of his own title. *Kozanjieff* v. *Petroff* (1939), 215 Ind. 286, 19 N. E. 2d 563; *Central Federal Savings & Loan Assn.* v. *Cummings* (1940), 216 Ind. 636, 25 N. E. 2d 638; *Bercot* v. *Velkoff* (1942), 111 Ind. App. 323, 41 N. E. 2d 686.

"It has been determined by numerous decisions of this court and the Supreme Court of Indiana that every fact necessary for plaintiff's recovery must be found and stated in the special finding or judgment must be for defendant. *Kehr* v. *Hall* (1889), 117 Ind. 405, 20 N. E. 279; *Town of Freedom* v. *Norris* (1891), 128 Ind. 377, 27 N. E. 869; *Mitchell* v. *Brawley* (1895), 140 Ind. 216, 39 N. E. 497; *McClure* v. *Anderson* (1915), 58 Ind. App. 615, 108 N. E. 757; *State ex rel. Siebrase* v. *Meiser* (1929), 201 Ind. 337, 168 N. E. 185. Nothing can be added to a special finding of fact by presumption, inference or intendment. *Cleveland, etc., R. Co.* v. *Moneyhun* (1896), 146 Ind. 147, 44 N. E. 1106, 34 L. R. A. 141; *Craig* v. *Bennett* (1897), 146 Ind. 574, 45 N. E. 792; *Hill* v. *Swihart* (1897), 148 Ind. 319, 47 N. E. 705; *Crowder* v. *Riggs, Auditor* (1899), 153 Ind. 158, 53 N. E. 1019; *Donaldson* v. *State ex rel.* (1906), 167 Ind. 553, 78 N. E. 182; *Rankin* v.

*McCollister* (1911), 175 Ind. 387, 93 N. E. 209; *State ex rel. Siebrase* v. *Meiser, supra.* Where a special finding of fact is silent upon a material point it is deemed to be found against the one who has the burden of proof. *Cleveland, etc., R. Co.* v. *Moneyhun, supra; Donaldson* v. *State ex rel., supra; Rankin* v. *McCollister, supra; Westphal* v. *Heckman* (1916), 185 Ind. 88, 113 N. E. 299; *State ex rel. Siebrase* v. *Meiser, supra.* The special finding should not set forth the evidence but should state the facts. . . ." *Bryant* v. *Barger* (1939), 106 Ind. App. 245, 250, 251, 18 N. E. 2d 965.

There is no finding of fact stated by the court that the cross-complainants were the owners in fee simple of the real estate in controversy either at the time the complaint was filed or at the time the cross-complaint was filed, nor is there any finding of fact that appellants were asserting any claim or interest therein adverse to the cross-complainants which was a cloud upon their title. It does not follow that because the appellants executed to the appellees a warranty deed for the real estate that the appellees were the owners of the fee simple title either at the time the complaint or the cross-complaint was filed. *Bryant* v. *Barger, supra.* The finding on the issue of ownership is one of ultimate fact and not a conclusion of law. *Bryant* v. *Barger, supra; Willard* v. *Bringolf* (1936), 103 Ind. App. 16, 5 N. E. 2d 315; *Dickason v. Dickason* (1940), 107 Ind. App. 515, 18 N. E. 2d 479, 25 N. E. 2d 1014; *Mellencamp* v. *Reeves Auto Company* (1935), 100 Ind. App. 26, 190 N. E. 618. In the light of these authorities the fourth conclusion of law was erroneous since it was not supported by any ultimate fact found.

The appellants contend in this appeal that appellees could not recover on their cross-complaint for the reason

that at the time it was filed the option contained ▮▮▮ in the contract for reconveyance had not expired.

The appellant, Dorothy Kerfoot, commenced her action on April 26, 1944. The cross-complaint was filed June 14, 1944, and by the express terms of the extension of the option in the contract, the option did not expire until the 11th day of December, 1944. "It is not sufficient for the defendant to have a counterclaim at the time he pleads. His right to plead relates to the time the plaintiff's action is commenced, and his counterclaim, to be available, must exist at that time." II Lowe's Works' Indiana Practice, p. 11, § 17.10. *Newkirk* v. *Neild* (1862), 19 Ind. 194, 196; *Durbin* v. *Northwestern Scraper Co.* (1905), 36 Ind. App. 123, 137, 73 N. E. 297. The same limitation applies to a cross-complaint. But the record in this appeal does not disclose that the question was raised in the trial court by plea in abatement, demurrer or otherwise, and for this reason we hold that this objection is not available in this appeal.

The special finding was silent on the issue that the deed and contract constituted an equitable mortgage. "Where a fact necessary to sustain the issues is ▮▮▮ not found, it must be regarded as not proved by the party having the burden of proof as to such fact, and the verdict must be construed as a finding against him to that extent. It necessarily follows that the proper remedy is a motion for a new trial on the ground that the verdict or finding is not sustained by sufficient evidence and not a motion for a *venire de novo*." II *Watson's Works, Practice and Forms* 456, § 1880. Appellants' joint and several motion for a new trial, therefore, properly raised the alleged error of the trial court's omission to find on the question of the equitable mortgage. See *Scott* v. *Collier* (1906), 166

Ind. 644, 78 N. E. 184; *Walters* v. *Walters* (1907), 168 Ind. 45, 79 N. E. 1037; *Richards* v. *Wilson* (1916), 185 Ind. 335, 112 N. E. 780.

The appellant, Dorothy Kerfoot, by her first paragraph of answer to appellees' cross-complaint specifically put in issue the question of the deed and contract to reconvey being in fact an equitable mortgage. The answer of the appellant, Oddie Kerfoot, to the cross-complaint stated "that he denies that his interest in said real estate is without right and unfounded and a cloud upon cross-complainants' title." Rule 1-3 of this court provides "all defenses shall be provable under a specific denial or statement of no information, which were heretofore available under an answer or reply in general denial." Under § 3-1302 and § 1308, Burns' 1946 Replacement, before the adoption of Rule 1-3, the defendant was "permitted to give in evidence every defense to the action that he may have, either legal or equitable." It seems to us that under the specific wording of the rule, when the defendant denied that his interest in the real estate was without right and unfounded and a cloud upon cross-complainants' title, he properly put in issue his contention that the deed and contract constituted an equitable mortgage without specifically alleging they constituted a mortgage in equity.

The evidence was uncontradicted that the deed and the contract to reconvey which was executed as part of the same transaction were prepared by counsel for the appellees, and in such case any ambiguity arising out of the contract must be construed against appellees. *Rosenbaum Bros.* v. *Nowak Milling Co.* (1943), 222 Ind. 108, 51 N. E. 2d 623. "The form and names of the instruments are not of controlling effect for the law looks through form to substance and

will give effect to the real and dominant intention of the parties when definitely ascertained. *Beardsley* v. *Beardsley* (1890), 138 U. S. 262, 11 Sup. Ct. 318, 34 L. Ed. 928; *Mendenhall* v. *First New Church, etc.* (1912), 177 Ind. 336, 342, 98 N. E. 57; *Herryford* v. *Davis*, (1880), 102 U. S. 235, 26 L. Ed. 160; *White* v. *Redenbaugh* (1907), 41 Ind. App. 580, 583, 82 N. E. 110." *In re Aurora Gaslight, etc., Co.* (1916), 64 Ind. App. 690, 697, 113 N. E. 1012. See also *Mendenhall* v. *First New Church Society of Indianapolis* (1912), 177 Ind. 336, 341, 342, 98 N. E. 57; *Prather* v. *Brandon* (1909), 44 Ind. App. 45, 49, 88 N. E. 700. This principle is particularly applicable since we are dealing with the question of an equitable mortgage, since "equity regards the substance rather than the form . . ." 21 C. J. 204, § 199. The preliminary recitals of the contract may be of some value, but they are not contractual, and can not be permitted to control the express provisions of the contract which are contractual in nature. *Irwin's Bank* v. *Fletcher, etc., Trust Co., Rec.* (1924), 195 Ind. 669, 145 N. E. 869, 146 N. E. 909. "Equity, in case of doubt, will construe a writing as a mortgage rather than a conditional sale. *Davis* v. *Stonestreet*, 4 Ind. 101, and authorities cited." *Heath* v. *Williams* (1869), 30 Ind. 495, 513.

The general rule is that "if a conveyance is made as a security for money, in whatever form the conveyance is made, or whatever cover may be used to disguise the transaction and hide its real character from others, as between the parties and as to all persons who have notice that the property is merely held as collateral security, it will be held and treated as a mortgage." 41 C. J. 312, 313, § 64.

Although the preliminary recitals stated the conveyance of the real estate was "in full consideration of all

the said indebtedness, and not as security for the loan of the amount of said indebtedness," the subsequent and contractual parts of the written agreement evidenced a contrary intention. The repayment of the sum of $9,710 was to draw 7% interest thereon to the time of reconveyance. The taxes were to be paid by the grantees and they were to *"add any such amount to the above indebtedness* to draw interest as aforesaid." (Italics added.) The grantees were to receive the rents from the real estate which together with 7% interest thereon were to be credited against the amount paid on reconveyance, which was an indication that the beneficial estate was still in the grantors.

The parties, by their acts subsequent to the conveyance, construed the transaction as a mortgage rather than an option for repurchase. On March 30, 1944, the appellant Dorothy F. Kerfoot, executed a written direction to the appellees for the application of the proceeds of the sale of Tract No. 3 "to any balance due and owing under certain contract entered into on the 11th day of April, 1941 . . . wherein we conveyed to you the above described real estate to hold as security for the indebtedness stipulated in said contract." Thereunder on the same document was an endorsement by the appellees that no credit was to be extended to Oddie Kerfoot "on the security described in the contract of April 11, 1941, without the written consent of Dorothy F. Kerfoot and that no credit has been extended to him." The books of account of appellees did not show any indebtedness of Oddie Kerfoot as being paid by the above deed and the contract to convey. Furthermore, the pleadings of the appellees in the cause, before amendment, referred to the transaction in substance as a mortgage. When a contract is ambiguous, the construction placed upon it

by the parties is of great weight in determining the true meaning of the terms. *Frazier* v. *Myers* (1892), 132 Ind. 71, 31 N. E. 536; *Bd. of County Commrs.* v. *Gibson* (1902), 158 Ind. 471, 63 N. E. 982.

It is not necessary to decide here as to whether the appellees could bring any personal action against the appellant Oddie Kerfoot on his indebtedness after the execution of the contract on April 11, 1942.

Under the contractual covenants of the agreement the indebtedness was still in existence, and was so treated by the parties thereafter. Although lack of promise to pay is important in deciding a transaction does not constitute a mortgage, yet "no personal covenant or promise on the part of the grantor to pay the debt is necessary to make it a mortgage." 41 C. J. 334, § 98. See *Moore* v. *McClain* (1918), 68 Ind. App. 102, 119 N. E. 258. For these reasons we feel constrained to hold that the deed and the contract to reconvey constituted an equitable mortgage. The option provisions of the contract, which had been extended until December 11, 1944, were an attempt to limit and defeat the right of redemption, and are thus void. *Federal Land Bank* v. *Schleeter* (1934), 208 Ind. 9, 193 N. E. 378.

However, this does not mean that the appellant Dorothy Kerfoot was entitled to have her title quieted to the remaining real estate covered by the contract. Payment was a question of fact. *Gradeless* v. *Gradeless, Admr.* (1943), 114 Ind. App. 10, 49 N. E. 2d 398; *Sam* v. *Allie, Admr.* (1943), 114 Ind. App. 156, 51 N. E. 393; *Hays* v. *Hays* (1912), 49 Ind. App. 298, 97 N. E. 198; *Hollander* v. *Fletcher* (1916), 62 Ind. App. 149, 112 N. E. 847. The burden of alleging and proving payment is not upon the creditor but it is upon the debtor or the one who is asserting rights by

reason of payment. *Pattison* v. *Shaw* (1882), 82 Ind. 32; *Godfrey* v. *Crisler* (1889), 121 Ind. 203, 22 N. E. 999. We can not say the undisputed evidence showed that the indebtedness of Oddie Kerfoot had all been paid or that the sum stated in the contract for reconveyance had been paid in full. The appellant Dorothy Kerfoot must prove such payment before she would be entitled to have a recovery on her complaint to quiet title. The trial court by its special finding did make the accounting and upon a retrial the court of necessity will find on the amount of debits and payments.

Judgment reversed, new trial ordered, with leave to the parties to amend their pleadings.

NOTE.—Reported in 84 N. E. 2d 190.